**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JAN 13 2023

TAMMY H. DOWNS, CLERK
By:_____
DEP CLERK

| | |
|---|---|
| **MOUNT VERNON FIRE**<br>**INSURANCE COMPANY,** | ) ) ) |
| *Plaintiff,* | ) ) ) |
| **v.** | ) ) Case No. 4:23CV34-LPR ) |
| **TC'S MIDTOWN GRILL NORTH,**<br>**INC. D/B/A TC'S MIDTOWN GRILL;**<br>**Serve Registered Agent**<br>**Gerald Thomas Colclasure**<br>**27 Hummingbird Ln**<br>**Conway, AR 72116** | ) ) ) ) ) ) ) |
| **CRYSTAL WHITE, INDIVIDUALLY**<br>**AND AS SPECIAL ADMINISTRATOR**<br>**OF THE ESTATE OF TIMOTHY**<br>**WHITE;**<br>**607 Reynolds St.**<br>**Coal Hill, AR 72832** | ) ) ) ) ) ) ) |
| **And** | ) ) ) |
| **JAMES ALLEN MICKAN**<br>**2107 E. Highway 64**<br>**Coal Hill, AR 72832** | ) ) ) ) ) |
| *Defendants.* | ) ) |

This case assigned to District Judge _____
and to Magistrate Judge _____

<u>**COMPLAINT FOR DECLARATORY JUDGMENT AND RESCISSION**</u>

**COMES NOW** Plaintiff Mount Vernon Fire Insurance Company ("Mount Vernon"), by

and through undersigned counsel and pursuant to 28 U.S.C. § 2201, and for its Complaint for

Declaratory Judgment and Rescission against Defendants TC's Midtown Grill North, Inc. d/b/a

TC's Midtown Grill ("TC's"), Crystal White, Individually and as Special Administrator of the

Estate of Timothy White ("White"), and James Allen Mickan ("Mickan") states as follows:

## PARTIES, JURISDICTION & VENUE

1.      Mount Vernon is a Nebraska insurance company with its principal place of business in Wayne, Pennsylvania such that it is a citizen of the State of Pennsylvania.

2.      TC's is an Arkansas domestic nonprofit corporation with its principal place of business at 1611 E. Oak St., Suite 10, Conway, AR 72032, and is a citizen of Arkansas. TC's may be served process through its registered agent Gerald Thomas Colcasure at the address stated above.

3.      White is a citizen of Arkansas. White may be served process at the address stated above.

4.      Mickan is a citizen of Arkansas. Mickan may be served process at the address stated above.

5.      White and Mickan have asserted claims against TC's in a lawsuit styled *White, et al. v. TC's Midtown Grill North, Inc., et al.*, Case No. 17CV-22-184, currently pending in the Circuit Court of Crawford County, Arkansas (the "underlying lawsuit"). A copy of the operative Second Amended Complaint from the underlying lawsuit containing those claims is attached hereto as Exhibit 1.

6.      This action is within the subject matter jurisdiction of this Court pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds $75,000 exclusive of interest and costs and the action is between citizens of different states, in that Mount Vernon is a citizen of Pennsylvania and TC's, White, and Mickan are citizens of Arkansas.

7.      This action is within the subject matter jurisdiction of this Court pursuant to 28 U.S.C. § 2201(a) because this complaint seeks a judicial declaration of the rights, statuses, and

2

legal relations of and among the parties with regard to a contract of insurance and because an actual case and controversy of a justiciable nature exists among the parties.

8.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because TC's is a resident of this district and a substantial part of the events giving rise to this dispute occurred in said District.

## FACTS COMMON TO ALL COUNTS

### A. Underlying Lawsuit Allegations

9.      In the underlying lawsuit, White and Mickan allege that, on August 6, 2020, a motor vehicle collision occurred between White's decedent Timothy White, non-party Mathew Gonzales, and Mickan on Highway 64 East in Faulkner County, Arkansas. White and Mickan allege that Gonzales operated his vehicle in an inattentive, careless, or negligent way and was "obviously intoxicated." White and Mickan further allege that Gonzales's blood alcohol level was above the legal limit for operating a motor vehicle in the State of Arkansas. White and Mickan allege that at the time of the collision Gonzales was an employee of TC's, a bar in Conway, Arkansas. White and Mickan allege that on the night of the collision, Gonzales consumed alcoholic beverages at TC's. White and Mickan allege that "it is also possible that [Gonzales] consumed alcoholic beverages while he was still clocked in" as an employee of TC's. White and Mickan allege that "it was common for [Gonzales] to drink to the point of intoxication while at Defendant TC's." *See Second Amended Complaint, p. 3-6, attached as Exhibit 1.*

10.     In the underlying lawsuit, White and Mickan alleged "[i]t was common for [Gonzales] to drink to the point of intoxication while working at [TC's]." *See Complaint, p. 5, attached as Exhibit 2; see also First Amended Complaint, p. 5, attached as Exhibit 3.*

3

11.     In "Cause of Action #1 – Dram Shop Liability" against TC's in the underlying lawsuit, White and Mickan allege that TC's sold or otherwise provided alcoholic beverages to Gonzales.  White and Mickan further allege that TC's knew or should have reasonably known that Gonzales was so obviously intoxicated at the time of the sale that he presented a clear danger to others.  White and Mickan allege that the sale was the proximate cause of their damages. *See Second Amended Complaint, p. 6, attached as Exhibit 1.*

12.     In "Cause of Action #2 – Negligent Retention and Negligent Supervision" against TC's in the underlying lawsuit, White and Mickan allege that TC's knew, or in the exercise of reasonable care should have known, that Gonzales subjected others to an unreasonable risk of harm.  White and Mickan further allege that TC's was negligent in supervising and retaining Gonzales and that TC's negligence in supervising and retaining Gonzales was a proximate cause of White and Mickan's damages. *See Second Amended Complaint, p. 7, attached as Exhibit 1.*

**B.  The Mount Vernon Policies**

13.     Mount Vernon issued Policy No. CL2674896E (the "Policy" or the "2020-2021 Policy") with a Policy Period of March 11, 2020 to March 11, 2021.  The Policy is attached hereto as Exhibit 4 and incorporated by reference.

14.     The Policy was issued to Named Insured "TC'S MIDTOWN GRILL NORTH, INC. DBA: TC'S MIDTOWN GRILL".

15.     The Policy identifies only one location: 1611 East Oak Street, Suite 13-16, Conway, AR 72032.

16.     The Policy contains a "Liquor Liability Coverage Form."  The Liquor Liability Coverage Form provides:

4

**SECTION I – LIQUOR LIABILITY COVERAGE**

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "injury" to which this insurance applies if liability for such "injury" is imposed on the insured by reason of the selling, serving or furnishing of any alcoholic beverage. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "injury" to which this insurance does not apply. We may, at our discretion, investigate any "injury" and settle any claim or "suit" that may result.

…

**2. Exclusions**

This insurance does not apply to:

*See Policy, Form CG 00 33 12 07, Page 1 of 6, attached hereto as Exhibit 4.*

17.     The Policy contains a Liquor Liability Coverage Form Policy Conditions Endorsement that provides as follows:

**LIQUOR LIABILITY COVERAGE FORM**

**POLICY CONDITIONS ENDORSEMENT**

**SECTION I - LIQUOR LIABILITY COVERAGE; 2. Exclusions** is amended to add the following:

Loss or expense, including but not limited to the cost of defense arising or resulting from a claim against any insured for "injury" based on the selling, serving or furnishing of any alcoholic beverage, if at any time, you have breached one or more of the conditions set forth in this Endorsement attached to and made a part of this policy.

| **Location** | **Policy Conditions** |
|---|---|
| 1 | **The insured represents as follows:** |

- The insured has no knowledge of more than three (3) citations, violations, charges or enforcement actions at this location within five (5) years of the date of the application. Of those three (3), no more than two (2) relate to the sale or service of alcohol or criminal activities.
- The insured has no knowledge of more than 1 liquor liability and/or assault or battery claims or notification of potential liquor liability and/or assault or battery claims for this

location arising out of occurrences within five years prior to the date the application is signed (excluding a liquor liability claim closed without payment because insured found not legally liable).

**As a condition of coverage, the insured agrees to maintain the following conditions during the term of this policy and any renewals thereof:**

- The insured does not offer liquor or wine for less than $1.50.
- The insured does not offer beer for less than $1.00.
- Alcohol sales cease by 2:00 AM.
- The establishment closes by 2:30 AM daily.
- Only the insured and its authorized employees or members are permitted to serve alcohol. In the alternative, the insured warrants that persons serving alcohol who are not the insured's authorized employees or members are covered under a policy of liquor liability insurance with limits greater than or equal to the limits of this policy.
- Employees or other persons are not permitted to consume alcohol during their hours of employment or service.

*See Policy, Form L-584C 03/17, Page 1 of 1, attached hereto as Exhibit 4.*

18.    Prior to the issuance of the 2020-2021 Policy, Mount Vernon issued the following

policies with substantially similar terms as the 2020-2021 Policy:

a.    Policy CL2674896A with a policy period of March 11, 2016 to March 11, 2017

(the "2016-2017 Policy"), *Declarations Page attached hereto as Exhibit 5*;

b.    Policy CL2674896B with a policy period of March 11, 2017 to March 11, 2018

(the "2017-2018 Policy"), *Declarations Page attached hereto as Exhibit 6*;

c.    Policy CL2674896C with a policy period of March 11, 2018 to March 11, 2019

(the "2018-2019 Policy"), *Declarations Page attached hereto as Exhibit 7*; and

d.    Policy CL2674896D with a policy period of March 11, 2019 to March 11, 2020

(the "2019-2020 Policy"), *Declarations Page attached hereto as Exhibit 8*;

6

19.    TC's has sought coverage of defense and indemnity from Mount Vernon under the 2020-2021 Policy.  Mount Vernon is currently defending TC's in the underlying lawsuit under reservation of rights.

20.    White and Mickan are interested parties in that they have an interest in the determination of coverage under the 2020-2021 Policy.  White and Mickan have made a demand for payment from Mount Vernon of the Liquor Each Common Cause Limit of $1,000,000 of the 2020-2021 Policy.

**C.  TC's Application and Renewal Applications for the Policy**

21.    In 2015, TC's submitted a Liquor Liability Warranty Application for insurance for a predecessor of the 2020-2021 Policy, Policy CL2674896.  In the 2015 application, TC's responded "No" to the question "Are employees or other persons selling or serving alcohol permitted to consume alcohol during their hours of employment or service?" *See 2015 Application, attached hereto as Exhibit 9.*

22.    The 2015 application signed and submitted by TC's included the following provisions:

> … By signing this application you are warranting that all information on this application is true and correct.
>
> …
>
> Applicant's Warranty Statement: I warrant that the information provided in this Application, and any amendments or modifications to this Application are true and correct. I acknowledge that the information provided in this Application is material to acceptance of the risk and the issuance of the requested policy by Company.  I agree that any claim, incident, occurrence, event or material change in the Applicant's operation taking place between the date this application was signed and the effective date of the insurance policy applied for which would render inaccurate, untrue or incomplete, any information provided in this Application, will immediately be reported in writing to the Company and the Company may withdraw or modify any outstanding quotations and/or void any authorization or agreement to bind the insurance.  Company may, but is not required, to make investigation of the information provided in this Application.  A decision by the

7

Company not to make or to limit such investigation does not constitute a waiver or estoppel of Company's rights.

I acknowledge that this Application is deemed incorporated by reference in any policy issued by Company in reliance thereon whether or not the Application is attached to the policy.

I acknowledge and agree that a breach of this WARRANTY STATEMENT is grounds for Company to declare void any policy or policies issued in reliance thereon and/or deny any claim(s) for coverage thereunder.

*See 2015 Application, attached hereto as Exhibit 9.*

23.     In 2017, TC's submitted a Renewal Application for the 2017-2018 Policy.  In the 2017 Renewal Application, TC's responded "No" to the question "Are employees or other persons selling or serving alcohol permitted to consume alcohol during their hours of employment or service for the Named Insured?" *See 2017 Renewal Application, attached hereto as Exhibit 10.*

24.     In the 2017 Renewal Application, TC's responded "No" to the question:

> 17. Has the Named Insured received any fines or citations for violations of law or ordinance related to illegal activities or the sale of alcohol occurring at this location within the past five years?
> If yes, Please answer the following:
>
> a. Provide date(s) and detailed description(s) or each violation.
>
> b. Describe any measures and/or procedures that have been put in place to prevent future violations.

*See 2017 Renewal Application, attached hereto as Exhibit 10.*

25.     The 2017 Renewal Application signed and submitted by TC's included the following provisions:

> If any of the following questions are answered 'YES', please submit complete details along with this application.  The questions on the form apply to the Named Insured's operations as of the date indicated above and for the next 12 months.
>
> ...
>
> WARRANTIES: I/we warrant that the information contained herein is true and that it shall be the basis of the policy of insurance and deemed incorporated therein, should the Company evidence its acceptance of this application by issuance of a policy.  I/we

agree that such policy shall be null and void if such information is false or misleading in any way, as this would materially affect acceptance of a risk by the Company. I/we hereby authorize release of claim information from any insurers or their general agent. I/we warrant that premises liability coverage will be maintained at limits at least equal to the liquor liability limits during the entire term of the liquor policy. I/we agree to submit records for audit by the Company upon termination or expiration of this policy for the determination of the actual gross receipts during the period of coverage, if requested.

I certify the above is true and representative to the best of my knowledge

*See 2017 Renewal Application, attached hereto as Exhibit 10.*

26.     In 2018, TC's submitted a Renewal Application for the 2018-2019 Policy. In the 2018 Renewal Application, TC's responded "No" to the question "Are employees or other persons selling or serving alcohol permitted to consume alcohol during their hours of employment or service for the Named insured?" *See 2018 Renewal Application, attached hereto as Exhibit 11.*

27.     In the 2018 Renewal Application, TC's responded "No" to the question:

17. Has the Named Insured received any fines or citations for violations of law or ordinance related to illegal activities or the sale of alcohol occurring at this location within the past five years?
If yes, Please answer the following:

a. Provide date(s) and detailed description(s) or each violation.

b. Describe any measures and/or procedures that have been put in place to prevent future violations.

*See 2018 Renewal Application, attached hereto as Exhibit 11.*

28.     The 2018 Renewal Application signed and submitted by TC's included the following provisions:

If any of the following questions are answered 'YES', please submit complete details along with this application. The questions on the form apply to the Named Insured's operations as of the date indicated above and for the next 12 months.

…
WARRANTIES: I/we warrant that the information contained herein is true and that it shall be the basis of the policy of insurance and deemed incorporated therein, should

the Company evidence its acceptance of this application by issuance of a policy.  I/we agree that such policy shall be null and void if such information is false or misleading in any way, as this would materially affect acceptance of a risk by the Company.  I/we hereby authorize release of claim information from any insurers or their general agent.  I/we warrant that premises liability coverage will be maintained at limits at least equal to the liquor liability limits during the entire term of the liquor policy.  I/we agree to submit records for audit by the Company upon termination or expiration of this policy for the determination of the actual gross receipts during the period of coverage, if requested.

I certify the above is true and representative to the best of my knowledge

*See 2018 Renewal Application, attached hereto as Exhibit 11.*

29.     In 2019, TC's submitted a Renewal Application for the 2019-2020 Policy.  In the 2019 Renewal Application, TC's responded "No" to the question "Are employees or other persons selling or serving alcohol permitted to consume alcohol during their hours of employment or service for the Named Insured?" *See 2019 Renewal Application, attached hereto as Exhibit 12.*

30.     In the 2019 Renewal Application, TC's responded "No" to the question:

17. Has the Named Insured received any fines or citations for violations of law or ordinance related to illegal activities or the sale of alcohol occurring at this location within the past five years?
If yes, Please answer the following:

a. Provide date(s) and detailed description(s) or each violation.

b. Describe any measures and/or procedures that have been put in place to prevent future violations.

*See 2019 Renewal Application, attached hereto as Exhibit 12.*

31.     The 2019 Renewal Application signed and submitted by TC's included the following provisions:

If any of the following questions are answered 'YES', please submit complete details along with this application.  The questions on the form apply to the Named Insured's operations as of the date indicated above and for the next 12 months.

…

WARRANTIES: I/we warrant that the information contained herein is true and that it shall be the basis of the policy of insurance and deemed incorporated therein, should the Company evidence its acceptance of this application by issuance of a policy. I/we agree that such policy shall be null and void if such information is false or misleading in any way, as this would materially affect acceptance of a risk by the Company. I/we hereby authorize release of claim information from any insurers or their general agent. I/we warrant that premises liability coverage will be maintained at limits at least equal to the liquor liability limits during the entire term of the liquor policy. I/we agree to submit records for audit by the Company upon termination or expiration of this policy for the determination of the actual gross receipts during the period of coverage, if requested.

I certify the above is true and representative to the best of my knowledge

*See 2019 Renewal Application, attached hereto as Exhibit 12.*

32.      On or about March 5, 2020, TC's submitted a Renewal Application for the 2020-2021 Policy. In the Renewal Application for the 2020-2021 Policy, TC's responded "No" to the question "Are employees or other persons selling or serving alcohol permitted to consume alcohol during their hours of employment or service for the Named Insured?" *See 2020 Renewal Application, attached hereto as Exhibit 13.*

33.      In the 2020 Renewal Application, TC's responded "No" to the question:

17. Has the Named Insured received any fines or citations for violations of law or ordinance related to illegal activities or the sale of alcohol occurring at this location within the past five years?
If yes, Please answer the following:

a. Provide date(s) and detailed description(s) or each violation.

b. Describe any measures and/or procedures that have been put in place to prevent future violations.

*See 2020 Renewal Application, attached hereto as Exhibit 13.*

34.      The 2020 Renewal Application signed and submitted by TC's included the following statements:

If any of the following questions are answered 'YES', please submit complete details along with this application. The questions on the form apply to the Named Insured's operations as of the date indicated above and for the next 12 months.

…

WARRANTIES: I/we warrant that the information contained herein is true and that it shall be the basis of the policy of insurance and deemed incorporated therein, should the Company evidence its acceptance of this application by issuance of a policy. I/we agree that such policy shall be null and void if such information is false or misleading in any way, as this would materially affect acceptance of a risk by the Company. I/we hereby authorize release of claim information from any insurers or their general agent. I/we warrant that premises liability coverage will be maintained at limits at least equal to the liquor liability limits during the entire term of the liquor policy. I/we agree to submit records for audit by the Company upon termination or expiration of this policy for the determination of the actual gross receipts during the period of coverage, if requested.

I certify the above is true and representative to the best of my knowledge

See 2020 Renewal Application, attached hereto as Exhibit 13.

**D. TC's permitted its employees or other persons selling or serving alcohol, including Gonzales, to consume alcohol during their hours of employment or service for TC's.**

35.    Prior to the collision at issue in the underlying lawsuit, TC's permitted employees to consume alcohol during their hours of employment or service for TC's.

36.    White and Mickan have alleged in the underlying lawsuit that, prior to the collision at issue, it was common for Gonzales to drink alcohol to the point of intoxication while during his hours of employment working at TC's. See Complaint, p. 5, attached as Exhibit 2; see also First Amended Complaint, p. 5, attached as Exhibit 3.

37.    White and Mickan allege that, in 2016, TC's received a "violation report" stating that several employees were sitting around a table with alcohol drinks in front of them. See Second Amended Complaint, p. 10, attached as Exhibit 1; see also First Amended Complaint, p. 9, attached as Exhibit 3.

**E. TC's citations, violations, charges or enforcement actions related to the sale of alcohol.**

38.     TC's was subject to multiple citations, violations, charges and/or enforcement actions related to the sale of alcohol during 2015 to 2020.

39.     In 2015, TC's was subject to a citation, violation, charges and/or enforcement action for the sale of alcohol to a minor.

40.     In 2016, TC's was subject to citations, violations, charges and/or enforcement actions for the sale of alcohol to intoxicated persons after hours.

41.     In 2017, TC's was subject to a citation, violation, charges and/or enforcement action for the sale of alcohol to a minor.

42.     In 2019, TC's was subject to a citation, violation, charges and/or enforcement action for the sale of alcohol to a minor.

43.     White and Mickan allege that, in 2016, TC's received a "violation report" for TC's "pattern and practice of allowing employees consume alcoholic beverages, often to the point of over-intoxication, on the premises after their shift." *See Second Amended Complaint, p. 10, attached as Exhibit 1; see also First Amended Complaint, p. 9, attached as Exhibit 3.*

44.     White and Mickan allege that the 2016 "violation report" TC's received "is in addition to numerous instances of TC's serving alcohol to minors." *See Second Amended Complaint, p. 11, attached as Exhibit 1; see also First Amended Complaint, p. 9, attached as Exhibit 3.*

**F. The information contained in TC's Application and Renewal Applications constitutes material misrepresentations.**

45.     Prior to the accident at issue in the underlying lawsuit, TC's permitted employees selling or serving alcohol to consume alcohol during their hours of employment or service.

46.     TC's made material misrepresentations on its Application and Renewal Applications by answering "No" to the questions regarding "Are employees or other persons selling or serving alcohol permitted to consume alcohol during their hours of employment or service [for the Named Insured]?"

47.     Mount Vernon would not have accepted the risk and issued the Policy had TC's truthfully answered "Yes" to the questions regarding "Are employees or other persons selling or serving alcohol permitted to consume alcohol during their hours of employment or service?"

48.     As early as October 2015 and through 2020, TC's received fines and citations for violations of law or ordinance related to illegal activities or the sale of alcohol at its location.

49.     TC's made material misrepresentations on its Renewal Applications, including the Renewal Application for the 2020-2021 Policy, by answering "No" to the following questions:

> 17. Has the Named Insured received any fines or citations for violations of law or ordinance related to illegal activities or the sale of alcohol occurring at this location within the past five years?
> If yes, Please answer the following:
>
> a. Provide date(s) and detailed description(s) or each violation.
>
> b. Describe any measures and/or procedures that have been put in place to prevent future violations.

50.     Mount Vernon would not have accepted the risk and issued the Policy had TC's truthfully answered "Yes" to the following questions:

> 17. Has the Named Insured received any fines or citations for violations of law or ordinance related to illegal activities or the sale of alcohol occurring at this location within the past five years?
> If yes, Please answer the following:
> a. Provide date(s) and detailed description(s) or each violation.
> b. Describe any measures and/or procedures that have been put in place to prevent future violations.

## COUNT I
## DECLARATORY JUDGMENT – RESCISSION

51.     Mount Vernon incorporates as if fully set forth herein the allegations contained in paragraphs 1 through 50, above.

52.     TC's made material misrepresentations on its Application and Renewal Applications by answering "No" to the questions regarding "Are employees or other persons selling or serving alcohol permitted to consume alcohol during their hours of employment or service?"

53.     Mount Vernon relied on the information provided by TC's in the Application and Renewal Applications.

54.     The Application and Renewal Applications were incorporated into and made a part of the respective Policies.

55.     Mount Vernon would not have accepted the risk and issued the Policy had TC's truthfully answered "Yes" to the questions regarding "Are employees or other persons selling or serving alcohol permitted to consume alcohol during their hours of employment or service?"

56.     TC's made material misrepresentations on its Renewal Applications by answering "No" to the following questions:

> 17. Has the Named Insured received any fines or citations for violations of law or ordinance related to illegal activities or the sale of alcohol occurring at this location within the past five years?
> If yes, Please answer the following:
>
> a. Provide date(s) and detailed description(s) or each violation.
>
> b. Describe any measures and/or procedures that have been put in place to prevent future violations.

57. Mount Vernon would not have accepted the risk and issued the 2016-2017, 2017-2018, 2018-2019, 2019-2020, or 2020-2021 Policies had TC's truthfully answered "Yes" to the following questions:

> 17. Has the Named Insured received any fines or citations for violations of law or ordinance related to illegal activities or the sale of alcohol occurring at this location within the past five years?
> If yes, Please answer the following:
> a. Provide date(s) and detailed description(s) or each violation.
> b. Describe any measures and/or procedures that have been put in place to prevent future violations.

58. TC's misrepresentations were statements of facts that were untrue and/or failures to disclose facts in response to a specific questions.

59. TC's misrepresentations were material because there is a causal relationship between the misrepresentations and the hazard resulting in a claim against TC's and an alleged loss under the Policy.

60. The material misrepresentations made by TC's void the 2016-2017, 2017-2018, 2018-2019, 2019-2020, and 2020-2021 Policies. The Court should declare the 2016-2017, 2017-2018, 2018-2019, 2019-2020, and 2020-2021 Policies void and rescind the 2016-2017, 2017-2018, 2018-2019, 2019-2020, and 2020-2021 Policies.

61. Mount Vernon stands ready, willing, and able to issue a refund to TC's for all premiums paid for the 2016-2017, 2017-2018, 2018-2019, 2019-2020, and 2020-2021 Policies by payment directly to TC's upon the Court's declaration that the 2016-2017, 2017-2018, 2018-2019, 2019-2020, and 2020-2021 Policies are void and rescinded. Alternatively, Mount Vernon stands ready, willing, and able to deposit all premiums paid for the 2016-2017, 2017-2018, 2018-2019, 2019-2020, and 2020-2021 Policies into the Court's registry during the pendency of this action.

WHEREFORE, Mount Vernon Fire Insurance Company respectfully prays that the Court (i) enter judgment in favor of Mount Vernon and against defendants on Count I of this Complaint;

(ii) declare that Mount Vernon is entitled to rescission of the 2016-2017, 2017-2018, 2018-2019, 2019-2020, and 2020-2021 Policies; (iii) declare that the 2016-2017, 2017-2018, 2018-2019, 2019-2020, and 2020-2021 Policies void and rescinded; (iv) declare that, because the 2016-2017, 2017-2018, 2018-2019, 2019-2020, and 2020-2021 Policies are void and rescinded, Mount Vernon does not owe and has never owed TC's a duty to defend it against the claims asserted by White and Mickan in the underlying suit; (v) declare that, because the 2016-2017, 2017-2018, 2018-2019, 2019-2020, and 2020-2021 Policies are void and rescinded, Mount Vernon does not owe TC's a duty to indemnify it for the claims asserted by White and Mickan in the underlying suit or for any judgment that may be entered on any such claims; (vi) once the Court declares that Mount Vernon is entitled to rescission of the 2016-2017, 2017-2018, 2018-2019, 2019-2020, and 2020-2021 Policies, authorize Mount Vernon to refund the premiums paid for the 2016-2017, 2017-2018, 2018-2019, 2019-2020, and 2020-2021 Policies; and (vii) grant to such other and further relief as the Court deems just and proper under the circumstances.

## COUNT II
## EQUITABLE RESCISSION

62.     Mount Vernon incorporates as if fully set forth herein the allegations contained in paragraphs 1 through 61, above.

63.     In the alternative to rescission by declaratory judgment as allowed by Arkansas law and as set forth in Count I, Mount Vernon requests that the Court use its affirmative powers in equity to rescind the 2016-2017, 2017-2018, 2018-2019, 2019-2020, and 2020-2021 Policies.

64.     TC's made material misrepresentations on its Application and Renewal Applications by answering "No" to the questions regarding "Are employees or other persons selling or serving alcohol permitted to consume alcohol during their hours of employment or service [of the Named Insured]?"

65.     Mount Vernon relied on the information provided by TC's in the Application and Renewal Applications.

66.     The Application and Renewal Applications were incorporated into the respective Policies.

67.     Mount Vernon would not have accepted the risk and issued the Policies had TC's truthfully answered "Yes" to the questions regarding "Are employees or other persons selling or serving alcohol permitted to consume alcohol during their hours of employment or service?"

68.     TC's made material misrepresentations on its Renewal Applications by answering "No" to the following questions:

> 17. Has the Named Insured received any fines or citations for violations of law or ordinance related to illegal activities or the sale of alcohol occurring at this location within the past five years?
> If yes, Please answer the following:
>
> a. Provide date(s) and detailed description(s) or each violation.
>
> b. Describe any measures and/or procedures that have been put in place to prevent future violations.

69.     Mount Vernon would not have accepted the risk and issued the 2016-2017, 2017-2018, 2018-2019, 2019-2020, or 2020-2021 Policies had TC's truthfully answered "Yes" to the following questions:

> 17. Has the Named Insured received any fines or citations for violations of law or ordinance related to illegal activities or the sale of alcohol occurring at this location within the past five years?
> If yes, Please answer the following:
> a. Provide date(s) and detailed description(s) or each violation.
> b. Describe any measures and/or procedures that have been put in place to prevent future violations.

70.     TC's misrepresentations were statements of facts that were untrue and/or failures to disclose facts in response to a specific questions.

71.    TC's misrepresentations were material because there is a causal relationship between the misrepresentations and the hazard resulting in a claim against TC's and an alleged loss under the Policy.

72.    The material misrepresentations made by TC's void the 2016-2017, 2017-2018, 2018-2019, 2019-2020, and 2020-2021 Policies.  The Court should rescind the 2016-2017, 2017-2018, 2018-2019, 2019-2020, and 2020-2021 Policies.

73.    Mount Vernon stands ready, willing, and able to issue a refund to TC's for all premiums paid for the 2016-2017, 2017-2018, 2018-2019, 2019-2020, and 2020-2021 Policies by payment directly to TC's upon the Court's rescission of the 2016-2017, 2017-2018, 2018-2019, 2019-2020, and 2020-2021 Policies.  Alternatively, Mount Vernon stands ready, willing, and able to deposit all premiums paid for the 2016-2017, 2017-2018, 2018-2019, 2019-2020, and 2020-2021 Policies into the Court's registry during the pendency of this action.

WHEREFORE, Mount Vernon Fire Insurance Company respectfully prays that the Court (i) enter judgment in favor of Mount Vernon and against defendants on Count II of this Complaint; (ii) exercise its affirmative powers in equity to rescind and void the 2016-2017, 2017-2018, 2018-2019, 2019-2020, and 2020-2021 Policies; (iii) if necessary, once the Court rescinds and voids the 2016-2017, 2017-2018, 2018-2019, 2019-2020, and 2020-2021 Policies, authorize Mount Vernon to refund the premiums paid for the 2016-2017, 2017-2018, 2018-2019, 2019-2020, and 2020-2021 Policies; and (iv) grant to such other and further relief as the Court deems just and proper under the circumstances.

## COUNT III
## DECLARATORY JUDGMENT – COVERAGE IS EXCLUDED BY THE POLICY CONDITIONS ENDORSEMENT

74.    Mount Vernon incorporates as if fully set forth herein the allegations contained in paragraphs 1 through 73, above.

75.    Coverage is excluded by the Policy Conditions Endorsement of the Policy for any claims by White and Mickan against TC's in the underlying lawsuit.  The Policy Conditions Endorsement of the Policy expressly excludes coverage for:

> Loss or expense, including but not limited to the cost of defense arising or resulting from a claim against any insured for "injury" based on the selling, serving or furnishing of any alcoholic beverage, if at any time, you have breached one or more of the conditions set forth in this Endorsement attached to and made a part of this policy.

**Location**                              **Policy Conditions**

1                  **The insured represents as follows:**

- The insured has no knowledge of more than three (3) citations, violations, charges or enforcement actions at this location within five (5) years of the date of the application.  Of those three (3), no more than two (2) relate to the sale or service of alcohol or criminal activities.

…

   **As a condition of coverage, the insured agrees to maintain the following conditions during the term of this policy and any renewals thereof:**

…

- Employees or other persons are not permitted to consume alcohol during their hours of employment or service.

76.    TC's breached one or more of the conditions set forth in the Policy Conditions Endorsement by having knowledge of more than three (3) citations, violations, charges or enforcement actions at TC's within five (5) years of the date of the 2020 Renewal Application.  Of those three (3), more than two (2) related to the sale or service of alcohol.  TC's had at least four (4) citations, violations, charges or enforcement actions at its location which related to the sale or

service of alcohol in the five years prior to the 2020 Renewal Application being signed and submitted to Mount Vernon.

77.     TC's breached one or more of the conditions set forth in the Policy Conditions Endorsement because, during the term of the Policy, employees - including Gonzales - were permitted to consume alcohol during their hours of employment or service.

78.     All claims in the underlying lawsuit are for "injury" based on the selling, serving or furnishing of any alcoholic beverage in that White and Mickan allege that their injuries and damages arise and result from the furnishing of alcohol to Gonzales resulting in Gonzales driving while intoxicating and causing the collision such that coverage is excluded by breaches of the Policy Conditions Endorsement.

79.     Mount Vernon owes no duty to indemnify or defend TC's in the underlying lawsuit pursuant to the terms of the Policy set forth above and owes no duty to indemnify TC's with respect to any judgment that may be entered therein.

WHEREFORE, Mount Vernon Fire Insurance Company respectfully prays that the Court (i) enter judgment in favor of Mount Vernon and against defendants on Count III of this Complaint; (ii) declare that Mount Vernon does not owe and has never owed TC's a duty to defend it against the claims asserted by White and Mickan in the underlying suit; (iii) declare that Mount Vernon does not owe TC's a duty to indemnify it for the claims asserted by White and Mickan in the underlying suit or for any judgment that may be entered on any such claims; and (iv) grant to such other and further relief as the Court deems just and proper under the circumstances.

## PRAYER FOR RELIEF

**WHEREFORE**, Mount Vernon Fire Insurance Company respectfully prays for the following relief from the Court:

A. Enter judgment in favor of Mount Vernon and against defendants on Count I and III of this Complaint;

B. Declare that Mount Vernon is entitled to rescission of the 2016-2017, 2017-2018, 2018-2019, 2019-2020, and 2020-2021 Policies;

C. Declare that the 2016-2017, 2017-2018, 2018-2019, 2019-2020, and 2020-2021 Policies are void and rescinded;

D. Declare that, because the 2016-2017, 2017-2018, 2018-2019, 2019-2020, and 2020-2021 Policies are void and rescinded, Mount Vernon does not owe and has never owed TC's a duty to defend it against the claims asserted by White and Mickan in the underlying suit;

E. Declare that, because the 2016-2017, 2017-2018, 2018-2019, 2019-2020, and 2020-2021 Policies are void and rescinded, Mount Vernon does not owe TC's a duty to indemnify it for the claims asserted by White and Mickan in the underlying suit or for any judgment that may be entered on any such claims;

F. Once the Court declares that Mount Vernon is entitled to rescission of the 2016-2017, 2017-2018, 2018-2019, 2019-2020, and 2020-2021 Policies, authorize Mount Vernon to refund the premiums paid for the 2016-2017, 2017-2018, 2018-2019, 2019-2020, and 2020-2021 Policies;

G. Alternative to judgment under Count I of this Complaint, enter judgment in favor of Mount Vernon and against defendants on Count II of this Complaint;

H. Exercise its affirmative powers in equity to rescind and void the 2016-2017, 2017-2018, 2018-2019, 2019-2020, and 2020-2021 Policies;

I.  If necessary, once the Court rescinds and voids the 2016-2017, 2017-2018, 2018-2019, 2019-2020, and 2020-2021 Policies, authorize Mount Vernon to refund the premiums paid for the 2016-2017, 2017-2018, 2018-2019, 2019-2020, and 2020-2021 Policies; and

J.  Declare that Mount Vernon does not owe and has never owed TC's a duty to defend it against the claims asserted by White and Mickan in the underlying suit due to TC's breaches of the Policy Conditions Endorsement;

K.  Declare that Mount Vernon does not owe TC's a duty to indemnify it for the claims asserted by White and Mickan in the underlying suit or for any judgment that may be entered on any such claims due to TC's breaches of the Policy Conditions Endorsement;

L.  Grant to such other and further relief as the Court deems just and proper under the circumstances.

Respectfully submitted,

HALL BOOTH SMITH, P.C.

500 Presidential Clinton Avenue, Suite RL 20
Little Rock, AR 72201
Telephone: 501-435-3190
Fax: 501-604-5566
Email: *twooten@hallboothsmith.com*

By: _Todd Wooten_
    Todd Wooten (ABN 94034)

**BAKER STERCHI
COWDEN & RICE, LLC**

Joshua S. Davis, AR #2019122
100 N. Broadway, 21st Floor
St. Louis, MO 63102
Phone: (314) 345-5000
Fax: (314) 345-5055
*jdavis@bakersterchi.com*

Scott D. Hofer          MO #44587
(District of AR Admission Forthcoming)
Kevin D. Brooks          MO #57627
(District of AR Admission Forthcoming)
1200 Main Street, Suite 2200
Kansas City, MO  64105
(816) 472-7474
(816) 472-6262 (Fax)
*shofer@bakersterchi.com*
*kbrooks@bakersterchi.com*
**Attorneys for Plaintiff**

ELECTRONICALLY FILED
Crawford County Circuit Court
Sharon Blount-Baker, Circuit Clerk
2022-Dec-12 17:06:28
17CV-22-184
C21D01 : 13 Pages

## IN THE CIRCUIT COURT OF CRAWFORD COUNTY, ARKANSAS
### 1st DIVISION

**CRYSTAL WHITE, INDIVIDUALLY AND
AS SPECIAL ADMINISTRATOR OF THE
ESTATE OF TIMOTHY WHITE, AND
JAMES ALLEN MICKAN**                                          **PLAINTIFFS**

**vs.**                         **CASE NO. 17CV-22-184**

**TC'S MIDTOWN GRILL NORTH, INC.
AND MATTHEW A. GONZALES**                                    **DEFENDANTS**

### SECOND AMENDED COMPLAINT

Come now the Plaintiffs, Crystal White, individually and as special administrator of the estate of Timothy White, and James Allen Mickan, by and through their attorneys, TAYLOR & TAYLOR LAW FIRM, P.A., and for their *First Amended Complaint* do state:

### JURISDICTION AND VENUE

1.      At all times relevant to this Complaint, Plaintiff Crystal White was a resident of Johnson County, Arkansas, and a citizen of the State of Arkansas.

2.      At all times relevant to this Complaint, Plaintiff James Allen Mickan was a resident of Johnson County, Arkansas, and a citizen of the State of Arkansas.

3.      At all times relevant to this Complaint, Defendant TC's Midtown Grill North, Inc. ("TC's") was an Arkansas corporation with a principal place of business in Faulkner County, Arkansas.

4.      At all times relevant to this Complaint, Defendant Matthew A. Gonzales was a resident of Faulkner County, Arkansas, and a citizen of the State of Arkansas.

**EXHIBIT
1**

5.      The facts and circumstances giving rise to this Complaint occurred in Faulkner County, Arkansas.

6.      This Court has subject matter jurisdiction of this matter pursuant to Ark. Code Ann. § 16-13-201(a).

7.      This Court has personal jurisdiction of the parties pursuant to Ark. Code Ann. § 16-4-101(B).

8.      Venue in this county is proper.

## FACTS

9.      On August 6, 2020, at approximately 10:22 p.m., a motor vehicle collision (the "Collision") occurred between Defendant Gonzales, Timothy White, and James Allen Mickan.

10.     The Collision occurred on Highway 64 East in Faulkner County.

11.     The approximate location of the Collision is the yellow pin in the map below.



12.     Immediately prior to the Collision, Defendant Gonzales was traveling eastbound on Highway 64.

13.     Defendant Gonzales was driving a Dodge Ram pickup truck.

14.     Defendant Gonzales was driving with his headlights turned off.

15.     Immediately prior to the Collision, White and Mickan were traveling westbound on Highway 64.

16.     White and Mickan were both driving Harley-Davidson motorcycles.

17.     White was traveling ahead of Mickan.

18.     Both White and Mickan entered the turn lane.

19.     Defendant Gonzales swerved into the turn lane while going around a curve in the road.

20.     The responding Trooper determined that Defendant Gonzales was operating his vehicle in an inattentive, careless, or negligent way.

**Unsafe Operation**
- ☐ 500 Reckless operation
- ☐ 501 Aggressive operation
- ☑ 502 Inattentive, careless, negligent, or erratic operation
- ☑ 503 Under the influence of alcohol
- ☐ 504 Under the influence of drugs

21.     The responding Trooper also determined that Defendant Gonzales failed to keep in a proper lane.

22.     A few hours after the Collision, Defendant Gonzales gave a written statement.

**Other Actions**
- ☐ 600 Impeding traffic
- ☐ 601 Ran off roadway
- ☐ 602 Crowded off roadway
- ☐ 603 Crossing median
- ☐ 604 Failed to yield right-of-way
- ☑ 605 Failed to keep in proper lane

23.     In his written statement, Defendant Gonzales admitted that he "mistakenly swerved into the turn lane and struck a motorcycle."

> As I looked down to check my Speedometer, I mistakenly swerved into the turn lane and struck a motorcycle. As I got out to

24.     The Trooper who worked the accident described Defendant Gonzales as having "a strong odor of intoxicants" and as having "bloodshot watery eyes."

> him to get his side of the story. At that time, I could smell a strong odor of intoxicants coming from the subject and noticed that he had bloodshot watery eyes as well. I then was able to talk to the driver of the orange motorcycle and the

25.     The responding Trooper noted in the Motor Vehicle Crash Report that Defendant Gonzales was under the influence of alcohol.

**Condition at Time of Crash**
Check all that apply:
- ☐ 000 Apparently normal
- ☐ 100 Physically impaired
- ☐ 101 Emotional (depressed, angry, disturbed, etc.)
- ☐ 102 Ill (sick) or fainted
- ☐ 103 Asleep or fatigued
- ☐ 104 Under the influence of medication or drugs
- ☑ 105 Under the influence of alcohol

26.     At the scene, Defendant Gonzales was obviously intoxicated.

27.     In fact, dash cam footage indicates that officers began referring to Defendant Gonzales as "the drunk."

28.     A blood alcohol test was performed on Defendant Gonzales.

29.     Defendant Gonzales's blood alcohol level was above the legal limit for operating a motor vehicle in the State of Arkansas.

30.     At the time of the Collision, Defendant Gonzales was an employee of Defendant TC's.

31.     Prior to being employed at Defendant TC's, Defendant Gonzales was arrested on January 13, 2018, for driving while intoxicated.

32.     Defendant Gonzales told the arresting officer that he was "coming from TC's Bar

& Grill."

STATEMENTS _DRIVER ADMITTED TO HAVING TWO DRINKS . HE WAS COMING FROM TC's BAR & GRILL FROM
          PICKING UP FRIENDS

33.     Defendant Gonzales pled guilty on February 26, 2018.

34.     Later that same year, on September 9, 2018, Defendant Gonzales applied for a job

with Defendant TC's.

35.     On the application, Defendant Gonzales was asked whether he had "ever been

convicted of a felony."

36.     Defendant Gonzales checked "No."

37.     Defendant Gonzales's driving-while-intoxicated offense was a misdemeanor.

38.     Defendant TC's application did not inquire as to whether applicants have been

convicted of driving while intoxicated.

39.     Defendant TC's hired Defendant Gonzales even though he had been arrested and

pleaded guilty earlier that same year for driving-while-intoxicated when Defendant Gonzales had

become intoxicated at TC's.

40.     On the night of the Collision, Defendant Gonzales consumed alcoholic beverages

from Defendant TC's.

41.     Based on recent discovery responses from Defendant TC's, Defendant Gonzales

clocked out at 6:08 p.m.

42.     Based on the time Defendant Gonzales clocked out, the time of the collision, and

the level of intoxication, Defendant Gonzales consumed alcoholic beverages *after* he clocked

out.

43.    Based on the time Defendant Gonzales clocked out, the time of the collision, and the level of intoxication, Defendant Gonzales was visibly intoxicated after he clocked out.

44.    Therefore, Defendant TC's provided alcoholic beverages to Defendant Gonzales after he clocked out, and after he was visibly drunk.

45.    It is also possible the Defendant Gonzales consumed alcoholic beverages while he was still clocked in.

46.    Defendant Gonzales became so intoxicated that a TC's employee attempted to obtain Defendant Gonzales's keys and also offered to drive Defendant Gonzales home.

47.    Defendant Gonzales refused and drove home anyway.

48.    It was common for Defendant Gonzales to drink to the point of intoxication while at Defendant TC's.

49.    It was common for an employee of Defendant TC's to attempt to retrieve the keys to Defendant Gonzales's vehicle.

50.    When employees of TC's would attempt to retrieve the keys, Defendant Gonzales would fight them.

51.    In spite of these actions by Defendant Gonzales, no disciplinary actions were taken against Defendant Gonzales by Defendant TC's.

52.    Defendant Gonzales continued to be employed by Defendant TC's at least until he was arrested in connection with this case on or about June 1, 2021.

## CAUSE OF ACTION #1 – DRAM SHOP LIABILITY
### (AGAINST DEFENDANT TC'S)

53.    Defendant TC's sold or otherwise provided alcoholic beverages to Defendant Gonzales.

54.     Defendant TC's knew or should have reasonably known that Defendant Gonzales was so obviously intoxicated at the time of the sale that he presented a clear danger to others.

55.     Such sale was a proximate cause of the Plaintiffs' damages.

<u>**CAUSE OF ACTION #2 – NEGLIGENT HIRING, NEGLIGENT RETENTION, AND NEGLIGENT SUPERVISION**</u>
<u>**(AGAINST DEFENDANT TC'S)**</u>

56.     Plaintiffs sustained damages.

57.     Defendant TC's knew, or in the exercise of reasonable care should have known, that Defendant Gonzales subjected others to an unreasonable risk of harm.

58.     Defendant TC's was negligent in hiring, supervising, and retaining Defendant Gonzales.

59.     Defendant TC's negligence in hiring, supervising, and retaining Defendant Gonzales was a proximate cause of the Plaintiffs' damages.

<u>**CAUSE OF ACTION #3 – NEGLIGENCE**</u>
<u>**(AGAINST DEFENDANT GONZALES)**</u>

60.     Defendant Gonzales owed numerous duties to Plaintiffs, and Defendant Gonzales breached those duties in the following manner:

A.      Driving while intoxicated in violation of Ark. Code Ann. § 5-65-103.

B.      Reckless driving in such a manner as to show disregard for the safety of persons and property in violation of Ark. Code Ann. § 27-50-308;

C.      Careless and prohibited acts of driving in violation of Ark. Code Ann. § 27-51-104, and other violations of applicable Arkansas traffic laws;

D.      Failure to keep a proper lookout for other vehicles on the roadway;

E.      Failure to keep Defendant's vehicle under proper control;

F.    Failure to otherwise use ordinary care under the circumstances at the time of the collision.

61.    The injuries and damages sustained by Plaintiffs, more particularly described below, were produced in a natural and continuous sequence, and were a probable consequence of Defendant Gonzales's breach of one or more of the above-described independent duties of ordinary care for the safety of Plaintiffs.

62.    Defendant Gonzales should have foreseen and anticipated that a breach of one or more of the above-described independent duties to use ordinary care would constitute an appreciable risk of harm to others, including Plaintiffs.

63.    If Defendant Gonzales had not breached one or more of the above-described independent duties to use ordinary care for the safety of Plaintiffs, then Plaintiffs' injuries and damages would not have occurred.

## COMPENSATORY DAMAGES (WHITE)

64.    White sustained severe personal injuries and died.

65.    White experienced extreme terror immediately before and after the Collision.

66.    White incurred medical expenses as a result of the incident.

67.    The Estate of White, which is represented in this litigation by Plaintiff Crystal White, Special Administratrix, has incurred funeral expenses and medical expenses.

68.    Plaintiff Crystal White is entitled to recover under Arkansas law for White's wrongful death and survival damages for his heirs at law under Ark. Code Ann. § 16-62-102 and Ark. Code Ann. § 16-62-101, which includes, but are not limited to, the following measure of damages:

A.      pecuniary injuries sustained, including benefits, goods, and services that White would have contributed, including the instruction, moral training, and supervision of education that might have reasonably been given;

B.      mental anguish suffered in the past and reasonably certain to be suffered in the future;

C.      reasonable value of funeral expenses;

D.      conscious pain and suffering of White prior to his death;

E.      conscious pain and suffering White's family members have suffered in the past and are reasonably certain to suffer in the future;

F.      value of any earnings, profits or salary lost by White and his heirs;

G.      any scars, disfigurement and visible results of the injuries sustained by White; and

H.      White's loss of life.

69.    Plaintiff Crystal White hereby demands loss of life damages to the full extent allowed under Arkansas law for the death of White.

70.    Plaintiff Crystal White claims all damages allowed by Arkansas law for the wrongful death of White.

71.    The heirs at law of White are entitled to recover damages for the wrongful death of White.

72.    Plaintiff Crystal White was married to the decedent, White, at the time of his death and Crystal White is entitled to recover for loss of consortium and be awarded damages for the reasonable value of any loss of the services, society, companionship, and marriage relationship of her husband proximately caused by the Defendants' negligence.

73.    The injuries and damages described herein have been suffered in the past and will be continuing in the future.

## COMPENSATORY DAMAGES (MICKAN)

74.    The injuries and damages sustained by Plaintiff Mickan as a result of Defendants' breach of the above duties include, but are not limited to, the following:

A.    serious bodily injuries to Plaintiff's left foot, stomach, right leg, right arm, and other parts of Plaintiff's body;

B.    physical pain; and

C.    mental anguish.

## PUNITIVE DAMAGES
### (AGAINST TC'S)

75.    This claim is pled in the alternative, in the event a jury determines that Gonzales was consuming alcohol while on the clock for TC's. *Panhandle Oil & Gas, Inc. v. BHP Billiton Petroleum (Fayetteville), LLC*, 2017 Ark. App. 201, at 12, 520 S.W.3d 277, 285.

76.    Defendant TC's had a pattern and practice of allowing employees to consume alcoholic beverages, often to the point of over-intoxication, on the premises after their shift.

77.    TC's received a "Violation Report" on May 16, 2016, on this very topic.

78.    The report stated that several employees were sitting around a table after 2:00 am with drinks in front of them.

_____ ... ... me sud served intoxicated patrons inside the club. At 2:00am, Deputy
Kelley and I entered the club. Once inside I observed people standing at the bar with alcoholic drinks in front of them. One of these individuals was obviously intoxicated and had to be told numerous times that a cab had been called and that he had to leave the bar. There were other individuals seated at a table and they had drinks in front of them, as well. The operator, Jason Fulmer, advised me that they were "employees". While clearing out the club, three women entered the unlocked door and one said she had forgotten her I.D. Another asked to use the bathroom and remarked that they had just left. This woman was obviously intoxicated. It was also obvious that the club had not closed at 2:00am, patrons were still drinking alcoholic beverages inside the club, some patrons in the club were intoxicated and over-served and there was a disturbance in the parking lot. When I notified Mr. Fulmer of these violations he called the manager, Thomas Colclasure. When Mr. Colclasure arrived I informed him of what I had observed and the expected violations to follow.

79.     The report indicates that one individual was "obviously intoxicated and had to be told numerous times that a cab had been called and that he had to leave the bar."

80.     Another woman was "obviously intoxicated."

81.     "[S]ome patrons in the club were intoxicated and over-served."

82.     This is in addition to numerous instances of TC's serving alcohol to minors.

83.     TC's knew, or should have known, that overserving employees and patrons would naturally and probably result in injury to others, but TC's continued such conduct in reckless disregard of the consequences

84.     Because Defendant TC's knew, or should have known, that its conduct would naturally and probably result in injury, but continued such conduct in reckless disregard of the consequences, the Plaintiffs pray for punitive damages against Defendant TCs in an amount sufficient to punish Defendant TC's for its knowingly reckless conduct and to deter TC's and other wrongdoers from similar conduct in the future.

## PUNITIVE DAMAGES
### (AGAINST GONZALES)

85.     Defendant Gonzales was intoxicated at the time of the collision.

86.     Defendant Gonzales's blood alcohol level (.124) far exceeded the legal limit (0.08).

| Matthew Gonzales: | |
|---|---|
| Blood | |
| Volatile | |
| Acetone | not detected |
| Ethanol | 0.124 g% |
| Isopropanol | not detected |
| Methanol | not detected |

87.     Defendant Gonzales knew, or should have known, that overserving employees and patrons would naturally and probably result in injury to others, but Defendant Gonzales continued such conduct in reckless disregard of the consequences

88.     Because Defendant Gonzales knew, or should have known, that his conduct would naturally and probably result in injury, but continued such conduct in reckless disregard of

the consequences, the Plaintiffs pray for punitive damages against Defendant Gonzales in an amount sufficient to punish Defendant Gonzales for his knowingly reckless conduct and to deter Defendant Gonzales and other wrongdoers from similar conduct in the future. *See Honeycutt v. Walden*, 294 Ark. 440, 442, 743 S.W.2d 809, 810 (1988) ("We have held any number of times that malice may be inferred from the operation of a motor vehicle, a potentially lethal machine, by one whose judgment, responses and coordination are impaired by alcohol.").

### AMOUNT OF DAMAGES
#### (FOR JURISDICTIONAL PURPOSES UNDER ARK. CODE ANN. § 16-63-221)

89. Plaintiffs' injuries and damages are in excess of the minimum amount required for federal court jurisdiction in diversity of citizenship cases.

### DEMAND FOR TRIAL BY JURY

90. Plaintiffs demand a trial by jury for all issues of fact presented by this action.

### RESERVATION OF ADDITIONAL CLAIMS

91. Upon completion of discovery, Plaintiffs reserve the right to plead further to state additional claims and to name additional parties to this action.

WHEREFORE, Plaintiffs pray for judgment against Defendants for the damages caused by Defendant's conduct as described above (including, but not limited to, punitive damages), for costs and attorneys' fees, and for all other relief at law or equity to which Plaintiffs may be entitled.

Respectfully submitted,
Crystal White, individually and as special administrator of the Estate of Timothy White, and James Allen Mickan,
*Plaintiffs*

BY: */s/ Andrew M. Taylor*
TAYLOR & TAYLOR LAW FIRM, P.A.
Andrew M. Taylor, Ark. Bar No. 2005147

Page 12 of 13

Tasha C. Taylor, Ark. Bar No. 2005148
Amanda Amick-Lytle, Ark. Bar No. 2021241
12921 Cantrell Road, Suite 205
Little Rock, AR 72223
Phone: (501) 246-8004
Fax:   (501) 246-8009
Email: Andy@TaylorLawFirm.com
        Tasha@TaylorLawFirm.com
        Amanda@TaylorLawFirm.com
*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned counsel filed the foregoing pleading, and the following counsel of record will receive notice of the filing through the eFlex system.

Mr. Nicholas D. Hornung
Mr. William J. Ogles
WRIGHT, LINDSEY & JENNINGS LLP
200 West Capitol Avenue, Suite 2300
Little Rock, Arkansas 72201-3699
*Counsel for Defendant Matthew A. Gonzales*

Ms. Staci Dumas Carson
WATTS, DONOVAN, TILLEY & CARSON, P.A.
2120 Riverfront Drive, Suite 275
Little Rock, Arkansas 72202-1436
*Counsel for Defendant TC's Midtown Grill North, Inc.*

*/s/ Andrew M. Taylor*
Andrew M. Taylor

ELECTRONICALLY FILED
Crawford County Circuit Court
Sharon Blount-Baker, Circuit Clerk
2022-May-09 09:49:56
17CV-22-184
C21D01 : 9 Pages

## IN THE CIRCUIT COURT OF CRAWFORD COUNTY, ARKANSAS
### DIVISION

CRYSTAL WHITE, INDIVIDUALLY AND
AS SPECIAL ADMINISTRATOR OF THE
ESTATE OF TIMOTHY WHITE, AND
JAMES ALLEN MICKAN                                          **PLAINTIFFS**

vs.                          CASE NO. _____

TC'S MIDTOWN GRILL NORTH, INC.
AND MATTHEW A. GONZALES                                     **DEFENDANTS**

### COMPLAINT

Come now the Plaintiffs, Crystal White, individually and as special administrator of the estate of Timothy White, and James Allen Mickan, by and through their attorneys, TAYLOR & TAYLOR LAW FIRM, P.A., and for their Complaint do state:

### JURISDICTION AND VENUE

1.    At all times relevant to this Complaint, Plaintiff Crystal White was a resident of Crawford County, Arkansas, and a citizen of the State of Arkansas.

2.    At all times relevant to this Complaint, Plaintiff James Allen Mickan was a resident of Johnson County, Arkansas, and a citizen of the State of Arkansas.

3.    At all times relevant to this Complaint, Defendant TC's Midtown Grill North, Inc. ("TC's") was an Arkansas corporation with a principal place of business in Faulkner County, Arkansas.

4.    At all times relevant to this Complaint, Defendant Matthew A. Gonzales was a resident of Faulkner County, Arkansas, and a citizen of the State of Arkansas.

EXHIBIT
2

5.    The facts and circumstances giving rise to this Complaint occurred in Faulkner County, Arkansas.

6.    This Court has subject matter jurisdiction of this matter pursuant to Ark. Code Ann. § 16-13-201(a).

7.    This Court has personal jurisdiction of the parties pursuant to Ark. Code Ann. § 16-4-101(B).

8.    Venue in this county is proper pursuant to Ark. Code Ann. § 16-60-101(a)(3)(A) (county in which a plaintiff resided).

### FACTS

9.    On August 6, 2020, at approximately 10:22 p.m., a motor vehicle collision (the "Collision") occurred between Defendant Gonzales, Timothy White, and James Allen Mickan.

10.    The Collision occurred on Highway 64 East in Faulkner County.

11.    The approximate location of the Collision is the yellow pin in the map below.



12.   Immediately prior to the Collision, Defendant Gonzales was traveling eastbound on Highway 64.

13.   Defendant Gonzales was driving a Dodge Ram pickup truck.

14.   Defendant Gonzales was driving with his headlights turned off.

15.   Immediately prior to the Collision, White and Mickan were traveling westbound on Highway 64.

16.   White and Mickan were both driving Harley-Davidson motorcycles.

17.   White was traveling ahead of Mickan.

18.   Both White and Mickan entered the turn lane.

19.   Defendant Gonzales swerved into the turn lane while going around a curve in the road.

20.   The responding Trooper determined that Defendant Gonzales was operating his vehicle in an inattentive, careless, or negligent way.

**Unsafe Operation**

☐ 500 Reckless operation
☐ 501 Aggressive operation
☑ 502 Inattentive, careless, negligent, or erratic operation
☑ 503 Under the influence of alcohol
☐ 504 Under the influence of drugs

21.   The responding Trooper also determined that Defendant Gonzales failed to keep in a proper lane.

22.   A few hours after the Collision, Defendant Gonzales gave a written statement.

**Other Actions**

☐ 600 Impeding traffic
☐ 601 Ran off roadway
☐ 602 Crowded off roadway
☐ 603 Crossing median
☐ 604 Failed to yield right-of-way
☑ 605 Failed to keep in proper lane

23.    In his written statement, Defendant Gonzales admitted that he "mistakenly swerved into the turn lane and struck a motorcycle."

As I looked down to check my speedometer, I mistakenly swerved into the turn lane and struck a motorcycle. As I got out to

24.    The Trooper who worked the accident described Defendant Gonzales as having "a strong odor of intoxicants" and as having "bloodshot watery eyes."

him to get his side of the story. At that time, I could smell a strong odor of intoxicants coming from the subject and noticed that he had bloodshot watery eyes as well. I then was able to talk to the driver of the orange motorcycle and the

25.    The responding Trooper noted in the Motor Vehicle Crash Report that Defendant Gonzales was under the influence of alcohol.

**Condition at Time of Crash**
Check all that apply
☐ 000 Apparently normal
☐ 100 Physically impaired
☐ 101 Emotional (depressed, angry, disturbed, etc.)
☐ 102 Ill (sick) or fainted
☐ 103 Asleep or fatigued
☐ 104 Under the influence of medication or drugs
☑ 105 Under the influence of alcohol

26.    A blood alcohol test was performed on Defendant Gonzales.

27.    Defendant Gonzales's blood alcohol level was above the legal limit for operating a motor vehicle in the State of Arkansas.

28.    At the time of the Collision, Defendant Gonzales was an employee of Defendant TC's.

29.    On the night of the Collision, Defendant Gonzales consumed alcoholic beverages from Defendant TC's.

30.    Defendant Gonzales became so intoxicated that a coworker attempted to obtain his keys and also offered to drive Defendant Gonzales home.

31.    Defendant Gonzales refused and drove home anyway.

Page 4 of 9

32.     It was common for Defendant Gonzales to drink to the point of intoxication while working at Defendant TC's.

33.     It was common for a coworker to attempt to retrieve the keys to Defendant Gonzales's vehicle.

34.     When coworkers would attempt to retrieve the keys, Defendant Gonzales would fight them.

35.     In spite of these actions by Defendant Gonzales, no disciplinary actions were taken against Defendant Gonzales by Defendant TC's.

36.     Defendant Gonzales continued to be employed by Defendant TC's at least until he was arrested in connection with this case on or about June 1, 2021.

## CAUSE OF ACTION #1 – DRAM SHOP LIABILITY
### (AGAINST DEFENDANT TC'S)

37.     Defendant TC's sold or otherwise provided alcoholic beverages to Defendant Gonzales.

38.     Defendant TC's knew or should have reasonably known that Defendant Gonzales was so obviously intoxicated at the time of the sale that he presented a clear danger to others.

39.     Such sale was a proximate cause of the Plaintiffs' damages.

## CAUSE OF ACTION #2 – NEGLIGENT RETENTION
## AND NEGLIGENT SUPERVISION
### (AGAINST DEFENDANT TC'S)

40.     Plaintiffs sustained damages.

41.     Defendant TC's knew, or in the exercise of reasonable care should have known, that Defendant Gonzales subjected others to an unreasonable risk of harm.

42.     Defendant TC's was negligent in supervising and retaining Defendant Gonzales.

43.     Defendant TC's negligence in supervising and retaining Defendant Gonzales was a proximate cause of the Plaintiffs' damages.

## CAUSE OF ACTION #3 – NEGLIGENCE
### (AGAINST DEFENDANT GONZALES)

44.     Defendant Gonzales owed numerous duties to Plaintiffs, and Defendant Gonzales breached those duties in the following manner:

A.     Driving while intoxicated in violation of Ark. Code Ann. § 5-65-103.

B.     Reckless driving in such a manner as to show disregard for the safety of persons and property in violation of Ark. Code Ann. § 27-50-308;

C.     Careless and prohibited acts of driving in violation of Ark. Code Ann. § 27-51-104, and other violations of applicable Arkansas traffic laws;

D.     Failure to keep a proper lookout for other vehicles on the roadway;

E.     Failure to keep Defendant's vehicle under proper control;

F.     Failure to otherwise use ordinary care under the circumstances at the time of the collision.

45.     The injuries and damages sustained by Plaintiffs, more particularly described below, were produced in a natural and continuous sequence, and were a probable consequence of Defendant Gonzales's breach of one or more of the above-described independent duties of ordinary care for the safety of Plaintiffs.

46.     Defendant Gonzales should have foreseen and anticipated that a breach of one or more of the above-described independent duties to use ordinary care would constitute an appreciable risk of harm to others, including Plaintiffs.

47.     If Defendant Gonzales had not breached one or more of the above-described independent duties to use ordinary care for the safety of Plaintiffs, then Plaintiffs' injuries and damages would not have occurred.

## COMPENSATORY DAMAGES (WHITE)

48.     White sustained severe personal injuries and died.

49.     White experienced extreme terror immediately before and after the Collision.

50.     White incurred medical expenses as a result of the incident.

51.     The Estate of White, which is represented in this litigation by Plaintiff Crystal White, Special Administratrix, has incurred funeral expenses and medical expenses.

52.     Plaintiff Crystal White is entitled to recover under Arkansas law for White's wrongful death and survival damages for his heirs at law under Ark. Code Ann. § 16-62-102 and Ark. Code Ann. § 16-62-101, which includes, but are not limited to, the following measure of damages:

A.      pecuniary injuries sustained, including benefits, goods, and services that White would have contributed, including the instruction, moral training, and supervision of education that might have reasonably been given;

B.      mental anguish suffered in the past and reasonably certain to be suffered in the future;

C.      reasonable value of funeral expenses;

D.      conscious pain and suffering of White prior to his death;

E.      conscious pain and suffering White's family members have suffered in the past and are reasonably certain to suffer in the future;

F.      value of any earnings, profits or salary lost by White and his heirs;

            G.      any scars, disfigurement and visible results of the injuries sustained by White; and

            H.      White's loss of life.

53.      Plaintiff Crystal White hereby demands loss of life damages to the full extent allowed under Arkansas law for the death of White.

54.      Plaintiff Crystal White claims all damages allowed by Arkansas law for the wrongful death of White.

55.      The heirs at law of White are entitled to recover damages for the wrongful death of White.

56.      Plaintiff Crystal White was married to the decedent, White, at the time of his death and Crystal White is entitled to recover for loss of consortium and be awarded damages for the reasonable value of any loss of the services, society, companionship, and marriage relationship of her husband proximately caused by the Defendants' negligence.

57.      The injuries and damages described herein have been suffered in the past and will be continuing in the future.

## COMPENSATORY DAMAGES (MICKAN)

58.      The injuries and damages sustained by Plaintiff Mickan as a result of Defendants' breach of the above duties include, but are not limited to, the following:

            A.      serious bodily injuries to Plaintiff's left foot, stomach, right leg, right arm, and other parts of Plaintiff's body;

            B.      physical pain; and

            C.      mental anguish.

## AMOUNT OF DAMAGES
### (FOR JURISDICTIONAL PURPOSES UNDER ARK. CODE ANN. § 16-63-221)

59.     Plaintiffs' injuries and damages are in excess of the minimum amount required for

federal court jurisdiction in diversity of citizenship cases.

## DEMAND FOR TRIAL BY JURY

60.     Plaintiffs demand a trial by jury for all issues of fact presented by this action.

## RESERVATION OF ADDITIONAL CLAIMS

61.     Upon completion of discovery, Plaintiffs reserve the right to plead further to state

additional claims and to name additional parties to this action.

WHEREFORE, Plaintiffs pray for judgment against Defendant for the damages caused

by Defendant's negligence as described above, for costs and attorneys' fees, and for all other

relief at law or equity to which Plaintiffs may be entitled.

> Respectfully submitted,
> Crystal White, individually and as special
> administrator of the Estate of Timothy White, and
> James Allen Mickan,
> *Plaintiffs*
>
> BY: */s/ Andrew M. Taylor*
> TAYLOR & TAYLOR LAW FIRM, P.A.
> Andrew M. Taylor, Ark. Bar No. 2005147
> Tasha C. Taylor, Ark. Bar No. 2005148
> Amanda Amick-Lytle, Ark. Bar No. 2021241
> 12921 Cantrell Road, Suite 205
> Little Rock, AR 72223
> Phone: (501) 246-8004
> Fax:    (501) 246-8009
> Email: Andy@TaylorLawFirm.com
>        Tasha@TaylorLawFirm.com
>        Amanda@TaylorLawFirm.com
> *Counsel for Plaintiffs*

THE CIRCUIT COURT OF CRAWFORD COUNTY, ARKANSAS
_____ DIVISION

CRYSTAL WHITE, INDIVIDUALLY AND
AS SPECIAL ADMINISTRATOR OF THE
ESTATE OF TIMOTHY WHITE, AND
JAMES ALLEN MICKAN
Plaintiffs

v.                              No. _____

TC'S MIDTOWN GRILL NORTH, INC.
AND MATTHEW A. GONZALES
Defendants

SUMMONS

**THE STATE OF ARKANSAS TO DEFENDANT:**

**MATTHEW GONZALES**
**68 Liberty Road**
**Vilonia, Arkansas 72173**

A lawsuit has been filed against you. The relief demanded is stated
in the attached complaint. Within 30 days after service of this
summons on you (not counting the day you received it) — or 60 days if
you are incarcerated in any jail, penitentiary, or other correctional
facility in Arkansas — you must file with the clerk of this court a
written answer to the complaint or a motion under Rule 12 of the
Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or
plaintiff's attorney, whose name and address are:

Andrew M. Taylor
TAYLOR & TAYLOR LAW FIRM, P.A.
12921 Cantrell Road, Suite 205
Little Rock, AR 72223

If you fail to respond within the applicable time period, judgment by
default may be entered against you for the relief demanded in the
complaint.

Additional Notices Included: _____

P.O. Box 608                    CLERK OF COURT

317 Main Street
Van Buren, Arkansas 72957

_____
[Signature of Clerk or Deputy
Clerk]

Date: _____

[SEAL]

**No.** _____    **This summons is for *MATTHEW GONZALES*.**

## PROOF OF SERVICE

☐ On _____ [date] I personally delivered the summons and complaint to the defendant at _____ [place]; or

☐ After making my purpose to deliver the summons and complaint clear, on _____ [date] I left the summons and complaint in the close proximity of the defendant by _____ [describe how the summons and complaint was left] after he/she refused to receive it when I offered it to him/her; or

☐ On _____ [date] I left the summons and complaint with _____, a member of the defendant's family at least 18 years of age, at _____ [address], a place where the defendant resides; or

☐ On_____ [date] I delivered the summons and complaint to _____ [name of individual], an agent authorized by appointment or by law to receive service of summons on behalf of _____ [name of defendant]; or

☐ On _____ [date] at _____ [address], where the defendant maintains an office or other fixed location for the conduct of business, during normal working hours I left the summons and complaint with

__ [name and job description]; or

☐ I am the plaintiff or an attorney of record for the plaintiff in a lawsuit, and I served the summons and complaint on the defendant by certified mail, return receipt requested, restricted delivery, as shown by the attached signed return receipt.

☐ I am the plaintiff or attorney of record for the plaintiff in this lawsuit, and I mailed a copy of the summons and complaint by first-class mail to the defendant together with two copies of a notice and acknowledgment and received the attached notice and acknowledgment form within twenty days after the date of mailing.

☐ Other [specify]:

☐ I was unable to execute service because:

My fee is $ _____.

**To be completed if service is by a sheriff or deputy sheriff:**

Date: _____          SHERIFF OF _____ COUNTY, ARKANSAS

By: _____
     [signature of server]

_____
     [printed name, title, and badge number]

**To be completed if service is by a person other than a sheriff or deputy sheriff:**

Date: _____

By: _____
     [signature of server]

_____
     [printed name]

Address: _____

Phone: _____

Subscribed and sworn to before me this date: _____

Notary Public _____

My Commission Expires: _____

Additional information regarding service or attempted service:
_____
_____



Arkansas Judiciary

**Case Title:**   CRYSTAL WHITE ETAL V TC MIDTOWN GRILL
NORTH ETAL

**Case Number:**   17CV-22-184

**Type:**   SUMMONS - FILER PREPARED

So Ordered

Electronically signed by MDDOWDY on 2022-05-09 10:48:58     page 5 of 5

*Arkansas*

120 N. Market St
Benton, Arkansas 72005
(501) 778-6207 or (501) 640-0025
Fax: (501) 776-6271

# STATE OF ARKANSAS)

## CRAWFORD COUNTY, ARKANSAS)                    Court:

Case Number: 17CV-22-184 _____ Date: 5/31/2022   Circuit ✓ US District_____

Date Received: 5/31/2022 _____   District _____ Probate_____

Attorney/ Individual: Andrew M. Taylor, Esq.   Other: _____

Plaintiff/Petitioner: Crystal White, Administrator of the Estate of Timothy White & James Allen

On this 31 day of May _____, 20 22 , at 3:00 , P M, I duly served the following:

**Documents:** Summons, Complaint.

**Person to be Served:** Matthew Gonzales

**AT:** 68 Liberty Rd. Vilonia, Ark 72173

By the following manner of Service: **POE:** _____ **Residence:** ✓

Other: _____

By delivering a true copy to:

The person herein named as: _____ Plaintiff _____ Defendant _____ Petitioner

✓ Some person residing at the defendant's dwelling, house or usual place of abode who is at least 18 years of age namely Blendie Gonzales ( Relative )

The duly designated agent for service of process for the defendant namely: _____

Left the documents in the proximity of the individual after he/she refused to receive it/them when offered.

Fee:$ 60.00 _____

Process Server: Jimmy H. McCool

Subscribed and Sworn to before me this 01 day of June , 20 22

My commission expires: 10/28/26 _____

Notary Public: Newell C. McManus

*[Notary seal: Newell C. McManus, NOTARY PUBLIC, 12699225, My Commission Expires, Saline County Arkansas]*

ELECTRONICALLY FILED
Crawford County Circuit Court
Sharon Blount-Baker, Circuit Clerk
2022-Nov-17  23:10:43
17CV-22-184
C21D01 : 12 Pages

## IN THE CIRCUIT COURT OF CRAWFORD COUNTY, ARKANSAS
### 1st DIVISION

CRYSTAL WHITE, INDIVIDUALLY AND
AS SPECIAL ADMINISTRATOR OF THE
ESTATE OF TIMOTHY WHITE, AND
JAMES ALLEN MICKAN                                    **PLAINTIFFS**

**vs.**                          **CASE NO. 17CV-22-184**

TC'S MIDTOWN GRILL NORTH, INC.
AND MATTHEW A. GONZALES                               **DEFENDANTS**

### FIRST AMENDED COMPLAINT

Come now the Plaintiffs, Crystal White, individually and as special administrator of the

estate of Timothy White, and James Allen Mickan, by and through their attorneys, TAYLOR &

TAYLOR LAW FIRM, P.A., and for their *First Amended Complaint* do state:

### JURISDICTION AND VENUE

1.      At all times relevant to this Complaint, Plaintiff Crystal White was a resident of

Johnson County, Arkansas, and a citizen of the State of Arkansas.

2.      At all times relevant to this Complaint, Plaintiff James Allen Mickan was a

resident of Johnson County, Arkansas, and a citizen of the State of Arkansas.

3.      At all times relevant to this Complaint, Defendant TC's Midtown Grill North, Inc.

("TC's") was an Arkansas corporation with a principal place of business in Faulkner County,

Arkansas.

4.      At all times relevant to this Complaint, Defendant Matthew A. Gonzales was a

resident of Faulkner County, Arkansas, and a citizen of the State of Arkansas.



5.      The facts and circumstances giving rise to this Complaint occurred in Faulkner County, Arkansas.

6.      This Court has subject matter jurisdiction of this matter pursuant to Ark. Code Ann. § 16-13-201(a).

7.      This Court has personal jurisdiction of the parties pursuant to Ark. Code Ann. § 16-4-101(B).

8.      Venue in this county is proper.

## FACTS

9.      On August 6, 2020, at approximately 10:22 p.m., a motor vehicle collision (the "Collision") occurred between Defendant Gonzales, Timothy White, and James Allen Mickan.

10.     The Collision occurred on Highway 64 East in Faulkner County.

11.     The approximate location of the Collision is the yellow pin in the map below.



12.     Immediately prior to the Collision, Defendant Gonzales was traveling eastbound on Highway 64.

13.     Defendant Gonzales was driving a Dodge Ram pickup truck.

14.     Defendant Gonzales was driving with his headlights turned off.

15.     Immediately prior to the Collision, White and Mickan were traveling westbound on Highway 64.

16.     White and Mickan were both driving Harley-Davidson motorcycles.

17.     White was traveling ahead of Mickan.

18.     Both White and Mickan entered the turn lane.

19.     Defendant Gonzales swerved into the turn lane while going around a curve in the road.

20.     The responding Trooper determined that Defendant Gonzales was operating his vehicle in an inattentive, careless, or negligent way.

**Unsafe Operation**

☐ 500 Reckless operation
☐ 501 Aggressive operation
☑ 502 Inattentive, careless, negligent, or erratic operation
☑ 503 Under the influence of alcohol
☐ 504 Under the influence of drugs

21.     The responding Trooper also determined that Defendant Gonzales failed to keep in a proper lane.

22.     A few hours after the Collision, Defendant Gonzales gave a written statement.

**Other Actions**

☐ 600 Impeding traffic
☐ 601 Ran off roadway
☐ 602 Crowded off roadway
☐ 603 Crossing median
☐ 604 Failed to yield right-of-way
☑ 605 Failed to keep in proper lane

23.     In his written statement, Defendant Gonzales admitted that he "mistakenly swerved into the turn lane and struck a motorcycle."

As I looked down to check my speedometer, I mistakenly swerved into the turn lane and struck a motorcycle. As I got out to

24.     The Trooper who worked the accident described Defendant Gonzales as having "a strong odor of intoxicants" and as having "bloodshot watery eyes."

him to get his side of the story. At that time, I could smell a strong odor of intoxicants coming from the subject and noticed that he had bloodshot watery eyes as well. I then was able to talk to the driver of the orange motorcycle and the

25.     The responding Trooper noted in the Motor Vehicle Crash Report that Defendant Gonzales was under the influence of alcohol.

**Condition at Time of Crash**
*Check all that apply:*
☐ 000 Apparently normal
☐ 100 Physically impaired
☐ 101 Emotional (depressed, angry, disturbed, etc.)
☐ 102 Ill (sick) or fainted
☐ 103 Asleep or fatigued
☐ 104 Under the influence of medication or drugs
☑ 105 Under the influence of alcohol

26.     At the scene, Defendant Gonzales was obviously intoxicated.

27.     In fact, dash cam footage indicates that officers began referring to Defendant Gonzales as "the drunk."

28.     A blood alcohol test was performed on Defendant Gonzales.

29.     Defendant Gonzales's blood alcohol level was above the legal limit for operating a motor vehicle in the State of Arkansas.

30.     At the time of the Collision, Defendant Gonzales was an employee of Defendant TC's.

31.     On the night of the Collision, Defendant Gonzales consumed alcoholic beverages from Defendant TC's.

32.     Defendant Gonzales became so intoxicated that a coworker attempted to obtain his keys and also offered to drive Defendant Gonzales home.

33.     Defendant Gonzales refused and drove home anyway.

34.     It was common for Defendant Gonzales to drink to the point of intoxication while working at Defendant TC's.

35.     It was common for a coworker to attempt to retrieve the keys to Defendant Gonzales's vehicle.

36.     When coworkers would attempt to retrieve the keys, Defendant Gonzales would fight them.

37.     In spite of these actions by Defendant Gonzales, no disciplinary actions were taken against Defendant Gonzales by Defendant TC's.

38.     Defendant Gonzales continued to be employed by Defendant TC's at least until he was arrested in connection with this case on or about June 1, 2021.

## CAUSE OF ACTION #1 – DRAM SHOP LIABILITY
### (AGAINST DEFENDANT TC'S)

39.     Defendant TC's sold or otherwise provided alcoholic beverages to Defendant Gonzales.

40.     Defendant TC's knew or should have reasonably known that Defendant Gonzales was so obviously intoxicated at the time of the sale that he presented a clear danger to others.

41.     Such sale was a proximate cause of the Plaintiffs' damages.

## CAUSE OF ACTION #2 – NEGLIGENT RETENTION
### AND NEGLIGENT SUPERVISION
### (AGAINST DEFENDANT TC'S)

42.     Plaintiffs sustained damages.

43.     Defendant TC's knew, or in the exercise of reasonable care should have known, that Defendant Gonzales subjected others to an unreasonable risk of harm.

44.     Defendant TC's was negligent in supervising and retaining Defendant Gonzales.

45.     Defendant TC's negligence in supervising and retaining Defendant Gonzales was a proximate cause of the Plaintiffs' damages.

## CAUSE OF ACTION #3 – NEGLIGENCE
### (AGAINST DEFENDANT GONZALES)

46.     Defendant Gonzales owed numerous duties to Plaintiffs, and Defendant Gonzales breached those duties in the following manner:

      A.     Driving while intoxicated in violation of Ark. Code Ann. § 5-65-103.

      B.     Reckless driving in such a manner as to show disregard for the safety of persons and property in violation of Ark. Code Ann. § 27-50-308;

      C.     Careless and prohibited acts of driving in violation of Ark. Code Ann. § 27-51-104, and other violations of applicable Arkansas traffic laws;

      D.     Failure to keep a proper lookout for other vehicles on the roadway;

      E.     Failure to keep Defendant's vehicle under proper control;

      F.     Failure to otherwise use ordinary care under the circumstances at the time of the collision.

47.     The injuries and damages sustained by Plaintiffs, more particularly described below, were produced in a natural and continuous sequence, and were a probable consequence of Defendant Gonzales's breach of one or more of the above-described independent duties of ordinary care for the safety of Plaintiffs.

48.    Defendant Gonzales should have foreseen and anticipated that a breach of one or more of the above-described independent duties to use ordinary care would constitute an appreciable risk of harm to others, including Plaintiffs.

49.    If Defendant Gonzales had not breached one or more of the above-described independent duties to use ordinary care for the safety of Plaintiffs, then Plaintiffs' injuries and damages would not have occurred.

## COMPENSATORY DAMAGES (WHITE)

50.    White sustained severe personal injuries and died.

51.    White experienced extreme terror immediately before and after the Collision.

52.    White incurred medical expenses as a result of the incident.

53.    The Estate of White, which is represented in this litigation by Plaintiff Crystal White, Special Administratrix, has incurred funeral expenses and medical expenses.

54.    Plaintiff Crystal White is entitled to recover under Arkansas law for White's wrongful death and survival damages for his heirs at law under Ark. Code Ann. § 16-62-102 and Ark. Code Ann. § 16-62-101, which includes, but are not limited to, the following measure of damages:

   A.    pecuniary injuries sustained, including benefits, goods, and services that White would have contributed, including the instruction, moral training, and supervision of education that might have reasonably been given;

   B.    mental anguish suffered in the past and reasonably certain to be suffered in the future;

   C.    reasonable value of funeral expenses;

   D.    conscious pain and suffering of White prior to his death;

> E.  conscious pain and suffering White's family members have suffered in the past and are reasonably certain to suffer in the future;
>
> F.  value of any earnings, profits or salary lost by White and his heirs;
>
> G.  any scars, disfigurement and visible results of the injuries sustained by White; and
>
> H.  White's loss of life.

55.  Plaintiff Crystal White hereby demands loss of life damages to the full extent allowed under Arkansas law for the death of White.

56.  Plaintiff Crystal White claims all damages allowed by Arkansas law for the wrongful death of White.

57.  The heirs at law of White are entitled to recover damages for the wrongful death of White.

58.  Plaintiff Crystal White was married to the decedent, White, at the time of his death and Crystal White is entitled to recover for loss of consortium and be awarded damages for the reasonable value of any loss of the services, society, companionship, and marriage relationship of her husband proximately caused by the Defendants' negligence.

59.  The injuries and damages described herein have been suffered in the past and will be continuing in the future.

## COMPENSATORY DAMAGES (MICKAN)

60.  The injuries and damages sustained by Plaintiff Mickan as a result of Defendants' breach of the above duties include, but are not limited to, the following:

> A.  serious bodily injuries to Plaintiff's left foot, stomach, right leg, right arm, and other parts of Plaintiff's body;

B.      physical pain; and

C.      mental anguish.

## PUNITIVE DAMAGES
### (AGAINST TC'S)

61.     Defendant TC's had a pattern and practice of allowing employees to consume alcoholic beverages, often to the point of over-intoxication, on the premises after their shift.

62.     TC's received a "Violation Report" on May 16, 2016, on this very topic.

63.     The report stated that several employees were sitting around a table after 2:00 am with drinks in front of them.

Kelley and I entered the club. Once inside I observed people standing at the bar with alcoholic drinks in front of them. One of these individuals was obviously intoxicated and had to be told numerous times that a cab had been called and that he had to leave the bar. There were other individuals seated at a table and they had drinks in front of them, as well. The operator, Jason Fulmer, advised me that they were "employees". While clearing out the club, three women entered the unlocked door and one said she had forgotten her I.D. Another asked to use the bathroom and remarked that they had just left. This woman was obviously intoxicated. It was also obvious that the club had not closed at 2:00am, patrons were still drinking alcoholic beverages inside the club, some patrons in the club were intoxicated and over-served and there was a disturbance in the parking lot. When I notified Mr. Fulmer of these violations he called the manager, Thomas Colclasure. When Mr. Colclasure arrived I informed him of what I had observed and the expected violations to follow.

64.     The report indicates that one individual was "obviously intoxicated and had to be told numerous times that a cab had been called and that he had to leave the bar."

65.     Another woman was "obviously intoxicated."

66.     "[S]ome patrons in the club were intoxicated and over-served."

67.     This is in addition to numerous instances of TC's serving alcohol to minors.

68.     TC's knew, or should have known, that overserving employees and patrons would naturally and probably result in injury to others, but TC's continued such conduct in reckless disregard of the consequences

69.     Because Defendant TC's knew, or should have known, that its conduct would naturally and probably result in injury, but continued such conduct in reckless disregard of the consequences, the Plaintiffs pray for punitive damages against Defendant TCs in an amount

sufficient to punish Defendant TC's for its knowingly reckless conduct and to deter TC's and other wrongdoers from similar conduct in the future.

## PUNITIVE DAMAGES
### (AGAINST GONZALES)

70.     Defendant Gonzales was intoxicated at the time of the collision.

71.     Defendant Gonzales's blood alcohol level (.124) far exceeded the legal limit (0.08).

| Matthew Gonzales: | |
| --- | --- |
| Blood | |
| Volatile | |
| Acetone | not detected |
| Ethanol | 0.124 g% |
| Isopropanol | not detected |
| Methanol | not detected |

72.     Defendant Gonzales knew, or should have known, that overserving employees and patrons would naturally and probably result in injury to others, but Defendant Gonzales continued such conduct in reckless disregard of the consequences

73.     Because Defendant Gonzales knew, or should have known, that his conduct would naturally and probably result in injury, but continued such conduct in reckless disregard of the consequences, the Plaintiffs pray for punitive damages against Defendant Gonzales in an amount sufficient to punish Defendant Gonzales for his knowingly reckless conduct and to deter Defendant Gonzales and other wrongdoers from similar conduct in the future. *See Honeycutt v. Walden*, 294 Ark. 440, 442, 743 S.W.2d 809, 810 (1988) ("We have held any number of times that malice may be inferred from the operation of a motor vehicle, a potentially lethal machine, by one whose judgment, responses and coordination are impaired by alcohol.").

## AMOUNT OF DAMAGES
### (FOR JURISDICTIONAL PURPOSES UNDER ARK. CODE ANN. § 16-63-221)

74.     Plaintiffs' injuries and damages are in excess of the minimum amount required for federal court jurisdiction in diversity of citizenship cases.

## DEMAND FOR TRIAL BY JURY

75.     Plaintiffs demand a trial by jury for all issues of fact presented by this action.

## RESERVATION OF ADDITIONAL CLAIMS

76.     Upon completion of discovery, Plaintiffs reserve the right to plead further to state

additional claims and to name additional parties to this action.

WHEREFORE, Plaintiffs pray for judgment against Defendants for the damages caused

by Defendant's conduct as described above (including, but not limited to, punitive damages), for

costs and attorneys' fees, and for all other relief at law or equity to which Plaintiffs may be

entitled.

Respectfully submitted,
Crystal White, individually and as special administrator of the Estate of Timothy White, and James Allen Mickan,
*Plaintiffs*

BY: */s/ Andrew M. Taylor*
TAYLOR & TAYLOR LAW FIRM, P.A.
Andrew M. Taylor, Ark. Bar No. 2005147
Tasha C. Taylor, Ark. Bar No. 2005148
Amanda Amick-Lytle, Ark. Bar No. 2021241
12921 Cantrell Road, Suite 205
Little Rock, AR 72223
Phone: (501) 246-8004
Fax:    (501) 246-8009
Email: Andy@TaylorLawFirm.com
        Tasha@TaylorLawFirm.com
        Amanda@TaylorLawFirm.com
*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned counsel filed the foregoing pleading, and the following counsel of record will receive notice of the filing through the eFlex system.

Mr. Nicholas D. Hornung
Mr. William J. Ogles
WRIGHT, LINDSEY & JENNINGS LLP
200 West Capitol Avenue, Suite 2300
Little Rock, Arkansas 72201-3699

Page 11 of 12

*Counsel for Defendant Matthew A. Gonzales*

Ms. Staci Dumas Carson
WATTS, DONOVAN, TILLEY & CARSON, P.A.
2120 Riverfront Drive, Suite 275
Little Rock, Arkansas 72202-1436
*Counsel for Defendant TC's Midtown Grill North, Inc.*

*/s/ Andrew M. Taylor*
Andrew M. Taylor

CL 2674896D
Renewal of Number

**Mount Vernon Fire Insurance Company**

Home Office Copy

1190 Devon Park Drive, Wayne, Pennsylvania 19087
A Member Company of United States Liability Insurance Group

POLICY DECLARATIONS

**No. CL 2674896E**

NAMED INSURED AND ADDRESS:
TC'S MIDTOWN GRILL NORTH, INC.
DBA: TC'S MIDTOWN GRILL
5313 FAIRVIEW AVE
NORTH LITTLE ROCK, AR 72116

This contract is registered and delivered as a surplus line coverage under the Surplus Lines Insurance Law, and it may in some respects be different from contracts issued by insurers in the admitted markets, and, accordingly, it may, depending upon the circumstances, be more or less favorable to an insured than a contract from an admitted carrier might be. The protection of the Arkansas Property and Casualty Guaranty Act does not apply to this contract. A tax of four percent (4%) is required to be collected from the insured on all surplus lines premiums.

POLICY PERIOD: (MO. DAY YR.)  From:  03/11/2020  To:  03/11/2021

12:01 A.M. STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE

FORM OF BUSINESS:      Corporation

BUSINESS DESCRIPTION: Bar/Tavern

IN RETURN FOR THE PAYMENT OF THE PREMIUM AND SUBJECT TO ALL THE TERMS OF THIS POLICY WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED.
THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.

PREMIUM

Liquor Liability Coverage Part

Wholesaler Broker Fee
Surplus Lines Tax
TOTAL:

**EXHIBIT**

**4**

Coverage Form(s) and Endorsement(s) made a part of this policy at time of issue
See Endorsement EOD (1/95)

Agent:   JENCAP INSURANCE SERVICES, INC. (AR) (1162)
         P.O. Box 231
         Turners, MO  65765

Issued:  03/11/2020 8:24 AM

Broker:

By: _____
Authorized Representative

UPD (08-07)

THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE PART DECLARATIONS, COVERAGE PART COVERAGE FORM(S) AND FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

## EXTENSION OF DECLARATIONS

Policy No. CL 2674896E

Effective Date:   03/11/2020
12:01 AM STANDARD TIME AT YOUR MAILING ADDRESS

FORMS AND ENDORSEMENTS

The following forms apply to the Liquor Liability coverage part

| Endt# | Revised | Description of Endorsements |
|-------|---------|-----------------------------|
| 2110 | 04/15 | Service Of Suit |
| CG0033 | 12/07 | Liquor Liability Coverage Form |
| IL0017 | 11/98 | Common Policy Conditions |
| IL0021 | 09/08 | Nuclear Energy Liability Exclusion Endorsement |
| IL0231 | 09/08 | Arkansas Changes - Cancellation And Nonrenewal |
| Jacket | 07/19 | Policy Jacket |
| L 590 | 10/16 | Exclusion - New Entities |
| L 657 | 10/16 | Absolute Pollution Exclusion - Liability |
| L 816 | 01/18 | Amendment of Conditions - Insurance Under Two or More Coverage Forms |
| L-224 | 12/17 | Punitive or Exemplary Damages Exclusion |
| L-584C | 03/17 | Policy Conditions Endorsement |
| L-610 | 11/04 | Expanded Definition Of Bodily Injury |
| L-618C | 09/09 | Amendment Of Premium Audit Conditions |
| LLQ100 | 04/15 | Who Is An Insured Clarification Endorsement |
| LLQ367 | 12/06 | Minimum Earned Premium Endorsement |
| LLQ368 | 04/15 | Separation Of Insureds Clarification Endorsement |
| LQ 354 | 10/16 | Limitation of Coverage to Insured Premises |
| LQ-203 | 08/07 | Additional Insured - Liquor License Holder |
| LQ-346 | 09/06 | Definition of "Receipts" |
| LQ-357 | 04/15 | "Assault" Or "Battery" Sublimit |
| LQ-428 | 10/16 | Absolute Firearms Exclusion |
| NTP AR | 04/15 | Arkansas Notice To Policyholders |

## LIQUOR LIABILITY COVERAGE PART DECLARATIONS

Policy No.    CL 2674896E

Effective Date: 03/11/2020
12:01 STANDARD TIME

### LIMITS OF INSURANCE

| | |
|---|---|
| Assault or Battery Aggregate Sublimit | $100,000 |
| Assault or Battery Each Common Cause Sublimit | $50,000 |
| Liquor Aggregate Limit | $2,000,000 |
| Liquor Each Common Cause Limit | $1,000,000 |

### LIABILITY DEDUCTIBLE $0

### LOCATIONS OF ALL PREMISES YOU OWN, RENT OR OCCUPY

| Location | Address | Territory |
|---|---|---|
| 1 | 1611 East Oak Street, Suite 13-16, Conway, AR 72032 | 001 |

### PREMIUM COMPUTATION

| Loc | Classification | Code No. | Premium Basis | Rate Pr/Co | Rate All Other | Advance Premium Pr/Co | Advance Premium All Other |
|---|---|---|---|---|---|---|---|
| 1 | Assault or Battery | 01095 | | | | | |
| 1 | Top Shelf without Assault or Battery coverage option | 01096 | | | | | |
| 1 | Restaurant - with sale of alcoholic beverages that are 50% or more of the total food and alcohol receipts of the restaurant | 00010 | | | | | |

MINIMUM PREMIUM FOR LIQUOR LIABILITY COVERAGE PART:

TOTAL PREMIUM FOR LIQUOR LIABILITY COVERAGE PART:
(This Premium may be subject to adjustment.)    MP - minimum premium

Coverage Form(s)/Part(s) and Endorsement(s) made a part of this policy at time of issue:
See Form EOD (01/95)

THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.

Includes copyrighted material of ISO Commercial Risk Services, Inc., with its permission.
Copyright, ISO Commercial Risk Services, Inc., 1983, 1984, 1988

**This page has been intentionally left blank.**

## Service Of Suit

Pursuant to any statute of any state, territory or district of the United States which makes provisions therefore, the Company hereby designates the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the Statute, or his successors in office, as our true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured(s) or any beneficiary hereunder arising out of this contract of insurance, and hereby designate the below named as the person to whom the said officer is authorized to mail process or a true copy thereof.

It is further agreed that service of process in such suit may be made upon the General Counsel of the Company, or his nominee, at 1190 Devon Park Drive, Wayne, Pennsylvania 19087 and that in any suit instituted against any one of them upon this policy, the Company will abide by the final decision of such Court or any Appellate Court in the event of an appeal.

COMMERCIAL GENERAL LIABILITY
CG 00 33 12 07

# LIQUOR LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

## SECTION I – LIQUOR LIABILITY COVERAGE

### 1. Insuring Agreement

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "injury" to which this insurance applies if liability for such "injury" is imposed on the insured by reason of the selling, serving or furnishing of any alcoholic beverage. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "injury" to which this insurance does not apply. We may, at our discretion, investigate any "injury" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

**b.** This insurance applies to "injury" only if:

**(1)** The "injury" occurs during the policy period in the "coverage territory"; and

**(2)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "injury" or claim, knew that the "injury" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "injury" occurred, then any continuation, change or resumption of such "injury" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Injury" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "injury" or claim, includes any continuation, change or resumption of that "injury" after the end of the policy period.

**d.** "Injury" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "injury" or claim:

**(1)** Reports all, or any part, of the "injury" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "injury"; or

**(3)** Becomes aware by any other means that "injury" has occurred or has begun to occur.

### 2. Exclusions

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Injury" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

© ISO Properties, Inc., 2006                       ☐

c. **Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

    **(a)** Employment by the insured; or

    **(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the "injury".

d. **Liquor License Not In Effect**

"Injury" arising out of any alcoholic beverage sold, served or furnished while any required license is not in effect.

e. **Your Product**

"Injury" arising out of "your product". This exclusion does not apply to "injury" for which the insured or the insured's indemnitees may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

f. **Other Insurance**

Any "injury" with respect to which other insurance is afforded, or would be afforded but for the exhaustion of the limits of insurance.

This exclusion does not apply if the other insurance responds to liability for "injury" imposed on the insured by reason of the selling, serving or furnishing of any alcoholic beverage.

g. **War**

"Injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**SUPPLEMENTARY PAYMENTS**

We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**1.** All expenses we incur.

**2.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**3.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**4.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

**5.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**6.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

**7.** Expenses incurred by the insured for first aid administered to others at the time of an event to which this insurance applies.

These payments will not reduce the limits of insurance.

**SECTION II – WHO IS AN INSURED**

**1.** If you are designated in the Declarations as:

    **a.** An individual, you and your spouse are insureds.

    **b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

    **c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

© ISO Properties, Inc., 2006 **CG 00 33 12 07** ☐

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**2.** Each of the following is also an insured:

**a.** Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an insured for:

**(1)** "Injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of Paragraph **(a)** above; or

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(a)** or **(b)** above.

**(2)** "Property damage" to property:

**(a)** Owned or occupied by, or

**(b)** Rented or loaned

to that "employee", any of your other "employees", by any of your partners or members (if you are a partnership or joint venture), or by any of your members (if you are a limited liability company).

**b.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**c.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier; and

**b.** Coverage does not apply to "injury" that occurred before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The Aggregate Limit is the most we will pay for all "injury" as the result of the selling, serving or furnishing of alcoholic beverages.

**3.** Subject to the Aggregate Limit, the Each Common Cause Limit is the most we will pay for all "injury" sustained by one or more persons or organizations as the result of the selling, serving or furnishing of any alcoholic beverage to any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – LIQUOR LIABILITY CONDITIONS

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Injury, Claim Or Suit**

    **a.** You must see to it that we are notified as soon as practicable of an "injury" which may result in a claim. To the extent possible, notice should include:

        **(1)** How, when and where the "injury" took place;

        **(2)** The names and addresses of any injured persons and witnesses; and

        **(3)** The nature and location of any "injury".

    **b.** If a claim is made or "suit" is brought against any insured, you must:

        **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

        **(2)** Notify us as soon as practicable.

        You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

    **c.** You and any other involved insured must:

        **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

        **(2)** Authorize us to obtain records and other information;

        **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

        **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of "injury" to which this insurance may also apply.

    **d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

    **a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

    **b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under this Coverage Part, our obligations are limited as follows:

    **a. Primary Insurance**

        This insurance is primary. Our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **b.** below.

    **b. Method Of Sharing**

        If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

        If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

    **a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

    **b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

   **c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

   **a.** The statements in the Declarations are accurate and complete;

   **b.** Those statements are based upon representations you made to us; and

   **c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

   **a.** As if each Named Insured were the only Named Insured; and

   **b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

**1.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**2.** "Coverage territory" means:

   **a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

   **b.** International waters or airspace, but only if the "injury" occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

   **c.** All other parts of the world if the "injury" arises out of:

      **(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above; or

      **(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business

      provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

**3.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**4.** "Executive Officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

**5.** "Injury" means damages because of "bodily injury" and "property damage", including damages for care, loss of services or loss of support.

**6.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**7.** "Property damage" means:

   **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the occurrence that caused it.

**8.** "Suit" means a civil proceeding in which damages because of "injury" to which this insurance applies are alleged. "Suit" includes:

   **a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

   **b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**9.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

 © ISO Properties, Inc., 2006

**10.** "Your product":

   **a.** Means:

      **(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

         **(a)** You;

         **(b)** Others trading under your name; or

         **(c)** A person or organization whose business or assets you have acquired; and

      **(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

   **b.** Includes:

      **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product", and

      **(2)** The providing of or failure to provide warnings or instructions.

   **c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

       © ISO Properties, Inc., 2006       **CG 00 33 12 07**    □

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

 Copyright, Insurance Services Office, Inc., 1998 ☐

IL 00 21 09 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**1.** The insurance does not apply:

**A.** Under any Liability Coverage, to "bodily injury" or "property damage":

**(1)** With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

**(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

**C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

**(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

**(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

**(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

**2.** As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "special nuclear material" or "by-product material".

© ISO Properties, Inc., 2007

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

 © ISO Properties, Inc., 2007

IL 02 31 09 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ARKANSAS CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

    CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
    COMMERCIAL AUTOMOBILE COVERAGE PART
    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    COMMERCIAL INLAND MARINE COVERAGE PART
    COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
    COMMERCIAL PROPERTY COVERAGE PART
    CRIME AND FIDELITY COVERAGE PART
    EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
    EQUIPMENT BREAKDOWN COVERAGE PART
    FARM COVERAGE PART
    FARM UMBRELLA LIABILITY POLICY
    LIQUOR LIABILITY COVERAGE PART
    MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
    POLLUTION LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraph **5.** of the **Cancellation** Common Policy Condition is replaced by the following:

    **5.a.** If this policy is cancelled, we will send the first Named Insured any premium refund due.

    **b.** We will refund the pro rata unearned premium if the policy is:

      **(1)** Cancelled by us or at our request;

      **(2)** Cancelled but rewritten with us or in our company group;

      **(3)** Cancelled because you no longer have an insurable interest in the property or business operation that is the subject of this insurance; or

      **(4)** Cancelled after the first year of a prepaid policy that was written for a term of more than one year.

    **c.** If the policy is cancelled at the request of the first Named Insured, other than a cancellation described in **b.(2), (3)** or **(4)** above, we will refund 90% of the pro rata unearned premium. However, the refund will be less than 90% of the pro rata unearned premium if the refund of such amount would reduce the premium retained by us to an amount less than the minimum premium for this policy.

    **d.** The cancellation will be effective even if we have not made or offered a refund.

    **e.** If the first Named Insured cancels the policy, we will retain no less than $100 of the premium, subject to the following:

      **(1)** We will retain no less than $250 of the premium for the Equipment Breakdown Coverage Part.

      **(2)** We will retain the premium developed for any annual policy period for the General Liability Classifications, if any, shown in the Declarations.

      **(3)** If the Commercial Auto Coverage Part covers only snowmobiles or golfmobiles, we will retain $100 or the premium shown in the Declarations, whichever is greater.

      **(4)** If the Commercial Auto Coverage Part covers an "auto" with a mounted amusement device, we will retain the premium shown in the Declarations for the amusement device and not less than $100 for the auto to which it is attached.

    © ISO Properties, Inc., 2007    

**B.** The following is added to the **Cancellation** Common Policy Condition:

**7. Cancellation Of Policies In Effect More Than 60 Days**

**a.** If this policy has been in effect more than 60 days or is a renewal policy, we may cancel only for one or more of the following reasons:

**(1)** Nonpayment of premium;

**(2)** Fraud or material misrepresentation made by you or with your knowledge in obtaining the policy, continuing the policy or in presenting a claim under the policy;

**(3)** The occurrence of a material change in the risk which substantially increases any hazard insured against after policy issuance;

**(4)** Violation of any local fire, health, safety, building or construction regulation or ordinance with respect to any insured property or its occupancy which substantially increases any hazard insured against under the policy;

**(5)** Nonpayment of membership dues in those cases where our by-laws, agreements or other legal instruments require payment as a condition of the issuance and maintenance of the policy; or

**(6)** A material violation of a material provision of the policy.

**b.** Subject to Paragraph **7.c.,** if we cancel for:

**(1)** Nonpayment of premium, we will mail or deliver written notice of cancellation, stating the reason for cancellation, to the first Named Insured and any lienholder or loss payee named in the policy at least 10 days before the effective date of cancellation.

**(2)** Any other reason, we will mail or deliver notice of cancellation to the first Named Insured and any lienholder or loss payee named in the policy at least 20 days before the effective date of cancellation.

**c.** The following applies to the Farm Umbrella Liability Policy, Commercial Liability Umbrella Coverage Part and the Commercial Automobile Coverage Part:

**(1)** If we cancel for nonpayment of premium, we will mail or deliver written notice of cancellation, stating the reason for cancellation, to the first Named Insured and any lienholder or loss payee named in the policy, and any lessee of whom we have received notification prior to the loss, at least 10 days before the effective date of cancellation;

**(2)** If we cancel for any other reason, we will mail or deliver notice of cancellation to the first Named Insured and any lienholder or loss payee named in the policy, and any lessee of whom we have received notification prior to the loss, at least 20 days before the effective date of cancellation.

**C.** Paragraph **g.** of the **Mortgageholders** Condition, if any, is replaced by the following:

**g.** If we elect not to renew this policy, we will give written notice to the mortgageholder:

**(1)** As soon as practicable if nonrenewal is due to the first Named Insured's failure to pay any premium required for renewal; or

**(2)** At least 60 days before the expiration date of this policy if we nonrenew for any other reason.

**D.** The following Condition is added and supersedes any other provision to the contrary:

**NONRENEWAL**

**1.** If we decide not to renew this policy, we will mail to the first Named Insured shown in the Declarations, and to any lienholder or loss payee named in the policy, written notice of nonrenewal at least 60 days before:

**a.** Its expiration date; or

**b.** Its anniversary date, if it is a policy written for a term of more than one year and with no fixed expiration date.

However, we are not required to send this notice if nonrenewal is due to the first Named Insured's failure to pay any premium required for renewal.

The provisions of this Paragraph **1.** do not apply to any mortgageholder.

**2.** We will mail our notice to the first Named Insured's mailing address last known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

 © ISO Properties, Inc., 2007

# INSURANCE

# POLICY

## UNITED STATES LIABILITY INSURANCE GROUP

A STOCK COMPANY

A BERKSHIRE HATHAWAY COMPANY

1190 Devon Park Drive
Wayne, PA 19087-2191
888-523-5545 – USLI.COM

This policy jacket together with the policy declarations, coverage forms and endorsements, if any, complete this policy.

The enclosed declarations designates the issuing company.

Jacket (07-19)

# INSURANCE POLICY

# Read your policy carefully!

**In Witness Whereof**, the company has caused this Policy to be executed and attested.  Where required by law, this Policy shall not be valid unless countersigned by a duly authorized representative of the company.

Secretary

President

This Endorsement modifies insurance provided under the following:

## LIQUOR LIABILITY COVERAGE PART

## EXCLUSION – NEW ENTITIES

Paragraph **3.** of WHO IS AN INSURED (Section **II**) does not apply.

All other terms and conditions of this Policy remain unchanged. This endorsement is a part of your Policy and takes effect on the effective date of your Policy unless another effective date is shown.

This endorsement modifies insurance provided under the following:

### LIQUOR LIABILITY COVERAGE FORM

## ABSOLUTE POLLUTION EXCLUSION – LIABILITY

**SECTION I – LIQUOR LIABILITY COVERAGE**, Subsection **2**. **Exclusions** is amended by the addition of the following:

**Pollution**:

(1) "Bodily injury" or "property damage"; or

(2) Damages for devaluation of property or for the taking, use or acquisition or interference with the rights of others in property or air space; or

(3) Any loss, cost or expense, including but not limited to fines and penalties, arising out of any governmental direction or request, or any private party or citizen action, that an insured test for, monitor, clean up, remove, contain, treat, detoxify or neutralize "pollutants"; or

(4) Any litigation or administrative procedure in which an insured may be involved as a party;

arising directly, indirectly, or in concurrence or in any sequence out of actual, alleged or threatened existence, discharge, dispersal, release or escape of "pollutants", whether or not such actual, alleged or threatened existence, discharge, dispersal, release or escape is sudden, accidental or gradual in nature.

In addition, this insurance does not apply to any "bodily injury" or "property damage", loss, cost or expense arising out of or related to any form of "pollutant", whether or not such actual, alleged or threatened existence, discharge, dispersal, release or escape is intentionally caused, or whether or not such injury, damage, devaluation, cost or expense is expected or intended from the standpoint of the insured.

This exclusion applies even if such "pollutant" has a function in, or is used by you in your business, operations, premises, site or location.

"Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including but not limited to smoke, vapor, soot, fumes, acids, alkalis, chemicals, toxic materials, "volatile organic compound" and gases therefrom, radon, combustion byproducts and "waste."

"Volatile organic compound" means any compound which discharges organic gases as it decomposes or evaporates, examples of which include but are not limited to formaldehyde, pesticides, adhesives, construction materials made with organic chemicals, solvents, paint varnish and cleaning products.

"Waste" means any property intended to be disposed, recycled, reused or reclaimed by the owner or user thereof.

All other terms and conditions of this policy remain unchanged.  This endorsement is a part of your policy and takes effect on the effective date of your policy unless another effective date is shown.

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**
**LIQUOR LIABILITY COVERAGE FORM**

# AMENDMENT OF CONDITIONS – INSURANCE UNDER TWO OR MORE COVERAGE FORMS

It is agreed:

The Other Insurance conditions of the applicable coverage forms are changed to include the following:

**Insurance Under Two or More Coverages**

This insurance does not apply to, and will not defend or pay for any loss for which coverage is available to you under other insurance provided by us. The foregoing shall apply even if the aggregate limit of liability under such other insurance has been exhausted.

Nor shall this insurance be excess over other insurance provided by us, whether such other insurance is primary, excess, contributory, contingent or otherwise and whether such other insurance is collected or not.

This condition does not apply to any excess or umbrella insurance issued by us or an affiliate.

All other terms are the same. This endorsement is a part of the Named Insured's policy. It takes effect on the effective date of the Named Insured's policy unless there is another effective date that is shown.

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**
**LIQUOR LIABILITY COVERAGE FORM**
**COMMERCIAL UMBRELLA POLICY**
**EXCESS LIABILITY POLICY**

## PUNITIVE OR EXEMPLARY DAMAGES EXCLUSION

Regardless of any other provision of this policy, this policy does not apply to punitive or exemplary damages.

If a "suit" is brought against any insured, and falls within the coverage provided by the policy, seeking both compensatory damages (damages for economic loss and pain and suffering) and punitive or exemplary damages (damages as a means of punishment), no coverage shall be provided by this policy for any costs, interest, defense costs, attorney or legal fees of any type or damages attributable to punitive or exemplary damages.

All other terms and conditions of this policy remain unchanged. This endorsement is a part of your policy and takes effect on the effective date of your policy unless another effective date is shown.

# UNITED STATES LIABILITY INSURANCE GROUP
# WAYNE, PENNSYLVANIA

This endorsement modifies insurance provided under the following:

## LIQUOR LIABILITY COVERAGE FORM

## POLICY CONDITIONS ENDORSEMENT

SECTION I - LIQUOR LIABILITY COVERAGE; 2. Exclusions is amended to add the following:

Loss or expense, including but not limited to the cost of defense arising or resulting from a claim against any insured for "injury" based on the selling, serving or furnishing of any alcoholic beverage, if at any time, you have breached one or more of the conditions set forth in this Endorsement attached to and made a part of this policy.

| Location | Policy Conditions |
|---|---|
| 1 | The insured represents as follows: |

- The insured has no knowledge of more than three (3) citations, violations, charges or enforcement actions at this location within five (5) years of the date of the application. Of those three (3), no more than two (2) relate to the sale or service of alcohol or criminal activities.

- The insured has no knowledge of more than 1 liquor liability and/or assault or battery claims or notification of potential liquor liability and/or assault or battery claims for this location arising out of occurrences within five years prior to the date the application is signed (excluding a liquor liability claim closed without payment because insured found not legally liable).

As a condition of coverage, the insured agrees to maintain the following conditions during the term of this policy and any renewals thereof:

- The insured does not offer liquor or wine for less than $1.50.

- The insured does not offer beer for less than $1.00.

- Alcohol sales cease by 2:00 AM.

- The establishment closes by 2:30 AM daily.

- Only the insured and its authorized employees or members are permitted to serve alcohol. In the alternative, the insured warrants that persons serving alcohol who are not the insured's authorized employees or members are covered under a policy of liquor liability insurance with limits greater than or equal to the limits of this policy.

- Employees or other persons are not permitted to consume alcohol during their hours of employment or service.

# UNITED STATES LIABILITY INSURANCE GROUP
## WAYNE, PENNSYLVANIA

This Endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE FORM
### BUSINESSOWNERS COVERAGE FORM
### LIQUOR LIABILITY COVERAGE FORM

## EXPANDED DEFINITION OF BODILY INJURY

The Definition of "bodily injury" is removed in its entirety and replaced with the following:

1.  "Bodily injury" means:
    a.  bodily injury,
    b.  sickness,
    c.  disease; or
    d.  mental anguish or emotional distress arising out of a., b., or c., above,

sustained by a person, including death resulting from any of these at any time.

All other terms and conditions of this policy remain unchanged. This endorsement is a part of your policy and takes effect on the effective date of your policy unless another effective date is shown.

# UNITED STATES LIABILITY INSURANCE GROUP
# WAYNE, PENNSYLVANIA

This endorsement modifies insurance provided under the following:

## LIQUOR LIABILITY COVERAGE FORM
## COMMERCIAL GENERAL LIABILITY COVERAGE FORM

# AMENDMENT OF PREMIUM AUDIT CONDITIONS

**SECTION IV**, paragraph **5. Premium Audit**, is hereby deleted in its entirety and replaced with the following:

**5. Inspections, Audits, and Premium adjustment**

a.  We will compute all premiums for this Coverage Part in accordance with our underwriting guides, rules and rates. We have the right to amend and adjust premium at any time during a policy period based on the results of an audit and/or inspection and our underwriting guides, rules and rates. Inspections may include but are not limited to investigation of records of state liquor control boards, commissions and similar agencies, and review of the insured's Internet websites.

b.  In addition to the above, we may examine and audit your books and records to compute the total earned premium at any time during the policy period or after the expiration date of a policy issued by the Company. At the close of each audit we may compute the earned premium for the policy period. If the total earned premium for the policy period is less than the advance premium, we will refund the difference, subject to the minimum premium, to the first Named Insured. If the total earned premium for the policy period as determined by an audit is greater than the advance premium, then additional Audit Premium is due and payable as provided herein. The premium for this policy may be amended during the current policy term based on the results of an audit of an expired/prior term. This may result in additional premium due to the Company for coverage under this policy.

c.  On the first policy issued to the Named Insured, the Company may examine and audit your books and records for policy period(s) prior to the effective date of our policy.

d.  The first Named Insured must cooperate with our reasonable requests to conduct inspections. Furthermore, the first Named Insured must keep current and accurate books and records and provide copies of such information needed for premium computation as our auditing representatives or we may request from time to time.

e.  Failure of the first Named Insured to cooperate with an audit at the expiration date may result in an Estimated Audit Premium being applied to this policy and will result in cancellation of any renewal policy issued by the Company. Failure to cooperate with an inspection or audit, or failure to comply with recommendations resulting from an

L 618C (09-09)                                                                                    Page 1 of 2

inspection during a current term policy may result in cancellation of the policy and retention of any unearned premium. If, subsequent thereto, the first Named Insured cooperates with the inspection or audit as requested, earned premium for the policy period will be calculated in accordance with the terms of this Endorsement.

**f.** Audit Premium, Estimated Audit Premium, or premium adjustments under **5.a.**, above are due and payable on notice to the first Named Insured. Failure to pay premium, including any Audit Premium, Estimated Audit Premium, or premium adjustments may result in the cancellation of this policy and/or any renewal policy issued by the Company.

All other terms and conditions of this policy remain unchanged. This endorsement is a part of your policy and takes effect on the effective date of your policy unless another effective date is shown.

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**
**LIQUOR LIABILITY COVERAGE FORM**

Throughout this policy, with the exception of **SECTION II – WHO IS AN INSURED;** when the word "insured(s)" is used it shall mean "any insured(s)".

All other terms and conditions of this policy remain unchanged. This endorsement is a part of your policy and takes effect on the effective date of your policy unless another effective date is shown.

LLQ 100 (04-15)                                                                 Page 1 of 1

# UNITED STATES LIABILITY INSURANCE GROUP
# WAYNE, PENNSYLVANIA

---

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE FORM
### LIQUOR LIABILITY COVERAGE FORM

---

## MINIMUM EARNED PREMIUM ENDORSEMENT

1) This policy is subject to a minimum earned premium.

2) If the earned premium, for the auditable portion of this policy, as determined by an audit for the full policy term is less than the minimum premium stated in this Endorsement, the minimum premium for this policy is not subject to adjustment.

3) If the total earned premium for the policy period as determined by an audit is less than the advance premium for coverage stated in the Declarations, the terms of this Endorsement shall supersede and replace the applicable terms of Paragraph 5 b. of Endorsements L-618B Amendment of Premium Audit Conditions, L-618 MT Amendment of Premium Audit Conditions or L-618C Amendment of Premium Audit Conditions, if attached to this policy.

4) In the event of cancellation of this policy by the company, the earned premium shall be computed pro rata and is not subject to the minimum premium stated in this Endorsement.


**General Liability**


General Liability Minimum Premium:                $_____

      a.  In the event of cancellation of this policy by the Named Insured, in consideration of the coverage provided, the company shall retain as a minimum earned premium the greater of:

      b.  The pro-rata or short-rate premium (whichever is applicable); or

      c.  25% of the minimum premium stated above; or

    d.  25% of the advance premium for general liability coverage stated in the Declarations.

    e.  Failure to make timely premium payments will be considered a request by you to cancel your policy. In the event of such cancellation for non-payment of premium, in consideration of the coverage provided, the company shall retain as a minimum earned premium <u>the greater of</u>:

        i.  The pro-rata or short-rate premium (whichever is applicable); or

        ii.  25% of the minimum premium stated above; or

        iii.  25% of the advance premium for general liability coverage stated in the Declarations.

## Liquor Liability

a.  In the event of cancellation of this policy by the Named Insured, in consideration of the coverage provided, the company shall retain as a minimum earned premium <u>the greater of</u>:

    i.  The pro-rata or short-rate premium (whichever is applicable); or

    ii.  25% of the advance premium for liquor liability coverage stated in the Declarations; or

    iii.  One Hundred and Fifty Dollars ($150).

b.  Failure to make timely premium payments will be considered a request by you to cancel your policy. In the event of such cancellation for non-payment of premium, in consideration of the coverage provided, the company shall retain as a minimum earned premium <u>the greater of</u>:

    i.  The pro-rata or short-rate premium (whichever is applicable); or

    ii.  25% of the advance premium for liquor liability coverage stated in the Declarations.

All other terms and conditions of this policy remain unchanged. This endorsement is a part of your policy and takes effect on the effective date of your policy unless another effective date is shown.

---

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**
**LIQUOR LIABILITY COVERAGE FORM**

---

## Separation Of Insureds Clarification Endorsement

It is agreed that **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS** and **SECTION IV – LIQUOR LIABILITY CONDITIONS**; **7. Separation Of Insureds** is deleted in its entirety and replaced with the following:

**7. Separation of Insureds**

The Limits of Insurance of this policy applies:

a.  As if each Named Insured were the only Named Insured; and

b.  Separately to each insured against whom claim is made or "suit" is brought, but nothing in this endorsement shall serve to increase the Limits of Insurance beyond the Per occurrence, per person, per premises, per common cause, aggregate or any similar limit stipulated in the Declarations.


All other terms and conditions of this policy remain unchanged.  This endorsement is a part of your policy and takes effect on the effective date of your policy unless another effective date is shown.

LLQ 368 (04-15)                                                              Page 1 of 1

This endorsement modifies insurance provided under the following:

## LIQUOR LIABILITY COVERAGE FORM

# LIMITATION OF COVERAGE TO INSURED PREMISES

It is agreed **SECTION I – LIQUOR LIABILITY COVERAGE; 1. Insuring Agreement, b. (1)** is deleted in its entirety and replaced with the following:

  **b.** This insurance applies to "injury" only if:
    **(1)** The "injury" occurs during the policy period in the "coverage territory" and the "injury" is a direct result of the selling, serving or furnishing of any alcoholic beverage at the "insured premises"; and

It is agreed SECTION **V – DEFINITIONS** is amended with the addition of the following:

  "Insured Premises" means the premises shown in the Declarations.

All other terms and conditions of this policy remain unchanged. This endorsement is a part of your policy and takes effect on the effective date of your policy unless another effective date is shown.

## UNITED STATES LIABILITY INSURANCE GROUP
## WAYNE, PENNSYLVANIA

> This endorsement modifies insurance provided under the following:
>
> ### LIQUOR LIABILITY COVERAGE FORM

## ADDITIONAL INSURED – LIQUOR LICENSE HOLDER

SECTION II – WHO IS AN INSURED, paragraph 2. is amended by the addition of the following:

d.  The license holder for the insured location, but only for acts within the scope of their duties related to the conduct of your business. However, none of these license holders are an insured for:

(1) "Injury":

    (a)    To you, to your partners or members (if you are a partnership of joint venture) or to your members (if you are a limited liability company); or

    (b)    For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in (a) above.

(2) "Property damage" to property:

    (a)    Owned or occupied by, or

    (b)    Rented or loaned to that license holder by any of your partners or members (if you are a partnership or limited liability company).

All other terms and conditions of this policy remain unchanged.  This endorsement is a part of your policy and takes effect on the effective date of your policy unless another effective date is shown.

LQ-203 (08-07)                                                                                        Page 1 of 1

# UNITED STATES LIABILITY INSURANCE GROUP
## WAYNE, PENNSYLVANIA

---

This endorsement modifies insurance provided under the following:

### LIQUOR LIABILITY COVERAGE FORM

---

## DEFINITION OF "RECEIPTS"

**SECTION V – DEFINITIONS** is amended to add the following:

"Receipts", when used as the basis for calculating premium under this policy, means the total, gross amount of money collected by an insured or by others on behalf of an insured during the policy period and, where applicable, for the calendar year immediately prior thereto, for the sale of alcoholic beverages, and of other beverages used in connection therewith. "Receipts" does not mean taxes paid by an insured directly to the taxing authority to the extent such payments are segregated from "receipts" and fully documented by an insured.

All other terms and conditions of this policy remain unchanged. This endorsement is a part of your policy and takes effect on the effective date of your policy unless another effective date is shown.

LQ 346 (9/06)                                                                 Page 1 of 1

This endorsement modifies insurance provided under the following:

## LIQUOR LIABILITY COVERAGE FORM

### "Assault" Or "Battery" Sublimit
### (Defense Outside Limits)

SCHEDULE

| | |
|---|---|
| "Assault" or "Battery" Each Common Cause Limit | $ |
| "Assault" or "Battery" Aggregate Limit | $ |

(*If no entry appears above, the information required to complete this endorsement will be shown in the Declarations)

It is agreed:

SECTION III – LIMITS OF INSURANCE is amended with the addition of the following:

Regardless of the number of insured's; claims made or "suits" brought; or persons or organizations making claims or bringing "suits" for "assault" or "battery":

a. The limits of insurance shown in the above Schedule are the most we will pay for the sum of all:

(1) "Injury" arising out of or resulting, directly or indirectly, from any "assault" or "battery" covered by this insurance; or

(2) Acts or omissions of any insured, its employees, agents, officers, directors, patrons or other persons resulting from any "assault" or battery" and occurring subsequent in time thereto which caused or are alleged to have caused, directly or indirectly, any "Injury" to any person.

b. The limits shown in the Schedule shall be part of, and not in addition to the Liquor Each Common Cause Limit and Liquor Aggregate Limit shown in the Declarations.

The limit of insurance shown in the above Schedule as aggregate is the most we will pay for all damages arising from or resulting, directly or indirectly from "Assault" or "Battery" under the **LIQUOR LIABILITY COVERAGE FORM**.

For the purposes of this endorsement, the following definitions shall apply:

"Assault" means the threat or use of force on another that causes that person to have apprehension of imminent harmful or offensive conduct, whether or not the threat or use of force is alleged to be negligent, intentional or criminal in nature.

"Battery" means negligent or intentional wrongful physical contact with another without consent that results in physical or emotional injury.

All other terms and conditions of this policy remain unchanged. This endorsement is a part of your policy and takes effect on the effective date of your policy unless another effective date is shown.

LQ 357 (04-15)                                                                 Page 1 of 1

This endorsement modifies insurance provided under the following:

**LIQUOR LIABILITY COVERAGE FORM**

## ABSOLUTE FIREARMS EXCLUSION

This insurance does not apply to "injury", including cost of defense, for any claim or "suit" arising or resulting from directly, or indirectly, the use of firearms of any kind.

This exclusion applies to any "injury", claim or "suit" regardless of whether the use of firearms is a direct cause, a contributing cause or a concurrent cause of any loss.

All other terms and conditions of this policy remain unchanged. This endorsement is a part of your policy and takes effect on the effective date of your policy unless another effective date is shown.

# <u>Arkansas Notice To Policyholders</u>

## IMPORTANT NOTICE

You may contact the insurance company's producer for information on this policy. The producer's address and phone number is:

Name:
Address:

Telephone Number:

You may contact your insurer designated on the policy declarations page. The company's name address and toll free number is:

United States Liability Insurance Group
1190 Devon Park Drive
Wayne, PA 19087
1-800-523-5545

If we at United States Liability Insurance Group fail to provide you with reasonable and adequate service, you should feel free to contact:

Arkansas Insurance Department
1200 West Third Street
Little Rock, AR 72201
(501 371-2640 or (800) 852-5494

CL 2674896
Renewal of Number

POLICY DECLARATIONS

**No. CL 2674896A**

**Mount Vernon Fire Insurance Company**
**1190 Devon Park Drive, Wayne, Pennsylvania 19087**
A Member Company of United States Liability Insurance Group

**Home Office Copy**

NAMED INSURED AND ADDRESS:

**TC's Midtown Grill North, Inc.**
**DBA: TC's Midtown Grill**
**5216 Crescent Drive**
**North Little Rock, AR 72118**

This contract is registered and delivered as a surplus line coverage under the Surplus Lines Insurance Law, and it may in some respects be different from contracts issued by insurers in the admitted markets, and, accordingly, it may, depending upon the circumstances, be more or less favorable to an insured than a contract from an admitted carrier might be. The protection of the Arkansas Property and Casualty Guaranty Act does not apply to this contract. A tax of four percent (4%) is required to be collected from the insured on all surplus lines premiums.

POLICY PERIOD: (MO. DAY YR.)  From:  03/11/2016  To:  03/11/2017

12:01 A.M. STANDARD TIME AT YOUR
MAILING ADDRESS SHOWN ABOVE

FORM OF BUSINESS:    Corporation

BUSINESS DESCRIPTION: Bar/Tavern

| IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY. |
|---|

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED.
THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.

PREMIUM

Liquor Liability Coverage Part

Surplus Lines Tax
**TOTAL:**

**EXHIBIT**

**5**

Coverage Form(s) and Endorsement(s) made a part of this policy at time of issue
**See Endorsement EOD (1/95)**

Agent:    **M.J. KELLY CO. (AR) (1162)**
          **P.O. Box 25540**
          **Little Rock, AR  72221-5540**

Broker:

Issued:  **03/07/2016 11:40 AM**

By: _____
                Authorized Representative

UPD (08-07)    **THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE PART DECLARATIONS, COVERAGE PART COVERAGE FORM(S) AND FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.**

## EXTENSION OF DECLARATIONS

**Policy No. CL 2674896A**

Effective Date:  **03/11/2016**

12:01 AM STANDARD TIME

**FORMS AND ENDORSEMENTS**

**The following forms apply to the Liquor Liability coverage part**

| Endt# | Revised | Description of Endorsements |
|-------|---------|----------------------------|
| 2110 | 09/10 | Service Of Suit |
| CG0033 | 12/07 | Liquor Liability Coverage Form |
| IL0017 | 11/98 | Common Policy Conditions |
| IL0021 | 09/08 | Nuclear Energy Liability Exclusion Endorsement |
| IL0231 | 09/08 | Arkansas Changes - Cancellation And Nonrenewal |
| L 657AR | 11/10 | Absolute Pollution Exclusion - Liability |
| L-224AR | 10/10 | Punitive Or Exemplary Damages Exclusion |
| L-584C | 07/14 | Warranty Endorsement |
| L-590 | 01/04 | Exclusion - New Entities |
| L-610 | 11/04 | Expanded Definition Of Bodily Injury |
| L-618C | 09/09 | Amendment Of Premium Audit Conditions |
| LLQ100 | 07/06 | Amendatory Endorsement |
| LLQ367 | 12/06 | Minimum Earned Premium Endorsement |
| LLQ368 | 08/10 | Separation Of Insureds Clarification Endorsement |
| LQ-203 | 08/07 | Additional Insured - Liquor License Holder |
| LQ-346 | 09/06 | Definition of "Receipts" |
| LQ-354 | 10/09 | Limitation Of Coverage To Insured Premises |
| LQ-357 | 10/11 | Assault or battery sublimit (defense outside limits) |
| LQ-428 | 03/12 | Absolute Firearms Exclusion |
| Jacket | 09/10 | Commercial Insurance Policy Jacket |

## LIQUOR LIABILITY COVERAGE PART DECLARATIONS

**Policy No.**   **CL 2674896A**

Effective Date:  03/11/2016
                12:01 AM STANDARD TIME

### LIMITS OF INSURANCE

| | |
|---|---|
| Liquor Each Common Cause Limit | **$1,000,000** |
| Liquor Aggregate Limit | **$2,000,000** |
| Assault or Battery Each Common Cause Sublimit | **$50,000** |
| Assault or Battery Aggregate Sublimit | **$100,000** |

### LIABILITY DEDUCTIBLE    **$0**

### LOCATIONS OF ALL PREMISES YOU OWN, RENT OR OCCUPY

| Location | Address | Territory |
|---|---|---|
| 1 | 1611 East Oak Street, Suite 13-16, Conway, AR 72032 | 001 |

### PREMIUM COMPUTATION

| Loc | Classification | Code No. | Premium Basis | Rate Pr/Co | Rate All Other | Advance Premium Pr/Co | Advance Premium All Other |
|---|---|---|---|---|---|---|---|
| 1 | Restaurant - with sale of alcoholic beverages that are 50% or more of the total food and alcohol receipts of the restaurant | 00010 | | | | | |
| 1 | Top Shelf without Assault or Battery coverage option | 01096 | | | | | |
| 1 | Assault or Battery | 01095 | | | | | |

#### MINIMUM PREMIUM FOR LIQUOR LIABILITY COVERAGE PART:

#### TOTAL PREMIUM FOR LIQUOR LIABILITY COVERAGE PART:
(This Premium may be subject to adjustment.)   **MP - minimum premium**

Coverage Form(s)/Part(s) and Endorsement(s) made a part of this policy at time of issue:
**See Form EOD (01/95)**

**THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.**

**This page has been intentionally left blank.**

# UNITED STATES LIABILITY INSURANCE GROUP
# WAYNE, PENNSYLVANIA

This endorsement modifies insurance provided under the following:

## LIQUOR LIABILITY COVERAGE FORM

# WARRANTY ENDORSEMENT

**SECTION I - LIQUOR LIABILITY COVERAGE; 2. Exclusions** is amended to add the following:

Loss or expense, including but not limited to the cost of defense arising or resulting from a claim against any insured for "injury" based on the selling, serving or furnishing of any alcoholic beverage, if at any time, you have breached one or more of the warranties set forth in this Warranty Endorsement attached to and made a part of this policy.

| Location | Warranties |
|---|---|
| 1 | **The insured warrants as follows:** |

- The insured has no knowledge of more than 1 liquor liability and/or assault or battery claims or notification of potential liquor liability and/or assault or battery claims for this location arising out of occurrences within five years prior to the date the application is signed (excluding a liquor liability claim closed without payment because insured found not legally liable).

- The insured has no knowledge of more than three (3) citations, violations, charges or enforcement actions at this location within five (5) years of the date of the application. Of those three (3), no more than two (2) relate to the sale or service of alcohol or criminal activities.

**As a condition of coverage, the insured agrees to maintain the following warranties during the term of this policy and any renewals thereof:**

- Employees or other persons are not permitted to consume alcohol during their hours of employment or service.

- Only the insured and its authorized employees or members are permitted to serve alcohol. In the alternative, the insured warrants that persons serving alcohol who are not the insured's authorized employees or members are covered under a policy of liquor liability insurance with limits greater than or equal to the limits of this policy.

- The establishment closes by 2:30 AM daily.

- Alcohol sales cease by 2:00 AM.

- The insured does not offer beer for less than $1.00.

- The insured does not offer liquor or wine for less than $1.50.

**CL 2674896A**
Renewal of Number

**POLICY DECLARATIONS**

**No. CL 2674896B**

Home Office Copy

# Mount Vernon Fire Insurance Company
**1190 Devon Park Drive, Wayne, Pennsylvania 19087**
A Member Company of United States Liability Insurance Group

NAMED INSURED AND ADDRESS:

**TC's Midtown Grill North, Inc.**
**DBA: TC's Midtown Grill**
**27 Hummingbird**
**Conway, AR 72032**

This contract is registered and delivered as a surplus line coverage under the Surplus Lines Insurance Law, and it may in some respects be different from contracts issued by insurers in the admitted markets, and, accordingly, it may, depending upon the circumstances, be more or less favorable to an insured than a contract from an admitted carrier might be.  The protection of the Arkansas Property and Casualty Guaranty Act does not apply to this contract.  A tax of four percent (4%) is required to be collected from the insured on all surplus lines premiums.

POLICY PERIOD: (MO. DAY YR.)   From:  03/11/2017  To:  03/11/2018

12:01 A.M. STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE

FORM OF BUSINESS:     Corporation

BUSINESS DESCRIPTION: Bar/Tavern

**IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED.
THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.

PREMIUM

Liquor Liability Coverage Part

Surplus Lines Tax
**TOTAL:**

**EXHIBIT**

**6**

Coverage Form(s) and Endorsement(s) made a part of this policy at time of issue
**See Endorsement EOD (1/95)**

Agent:   **M.J. KELLY CO. (AR) (1162)**
**P.O. Box 25540**
**Little Rock, AR  72221-5540**

Issued:  **03/07/2017 12:22 PM**

Broker:

By: _Thomas P. Kerney_
Authorized Representative

UPD (08-07)   **THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE PART DECLARATIONS, COVERAGE PART COVERAGE FORM(S) AND FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.**

## EXTENSION OF DECLARATIONS

**Policy No. CL 2674896B**

Effective Date:   **03/11/2017**

12:01 AM STANDARD TIME

### FORMS AND ENDORSEMENTS

**The following forms apply to the Liquor Liability coverage part**

| Endt# | Revised | Description of Endorsements |
|---|---|---|
| 2110 | 09/10 | Service Of Suit |
| CG0033 | 12/07 | Liquor Liability Coverage Form |
| IL0017 | 11/98 | Common Policy Conditions |
| IL0021 | 09/08 | Nuclear Energy Liability Exclusion Endorsement |
| IL0231 | 09/08 | Arkansas Changes - Cancellation And Nonrenewal |
| L 657AR | 11/10 | Absolute Pollution Exclusion - Liability |
| L-224AR | 10/10 | Punitive Or Exemplary Damages Exclusion |
| L-584C | 07/14 | Warranty Endorsement |
| L-590 | 01/04 | Exclusion - New Entities |
| L-610 | 11/04 | Expanded Definition Of Bodily Injury |
| L-618C | 09/09 | Amendment Of Premium Audit Conditions |
| LLQ100 | 07/06 | Amendatory Endorsement |
| LLQ367 | 12/06 | Minimum Earned Premium Endorsement |
| LLQ368 | 08/10 | Separation Of Insureds Clarification Endorsement |
| LQ-203 | 08/07 | Additional Insured - Liquor License Holder |
| LQ-346 | 09/06 | Definition of "Receipts" |
| LQ-354 | 10/09 | Limitation Of Coverage To Insured Premises |
| LQ-357 | 10/11 | Assault or battery sublimit (defense outside limits) |
| LQ-428 | 03/12 | Absolute Firearms Exclusion |
| NTP AR | 04/15 | Arkansas Notice To Policyholders |
| Jacket | 09/10 | Commercial Insurance Policy Jacket |

## LIQUOR LIABILITY COVERAGE PART DECLARATIONS

**Policy No.**   **CL 2674896B**

Effective Date:  03/11/2017
12:01 AM STANDARD TIME

### LIMITS OF INSURANCE

| | |
|---|---|
| Liquor Each Common Cause Limit | **$1,000,000** |
| Liquor Aggregate Limit | **$2,000,000** |
| Assault or Battery Each Common Cause Sublimit | **$50,000** |
| Assault or Battery Aggregate Sublimit | **$100,000** |

### LIABILITY DEDUCTIBLE    $0

### LOCATIONS OF ALL PREMISES YOU OWN, RENT OR OCCUPY

| Location | Address | Territory |
|---|---|---|
| 1 | 1611 East Oak Street, Suite 13-16, Conway, AR 72032 | 001 |

### PREMIUM COMPUTATION

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | | | | | | Rate | Advance Premium |
| Loc | Classification | Code No. | Premium Basis | Pr/Co | All Other | Pr/Co | All Other |
| 1 | Restaurant - with sale of alcoholic beverages that are 50% or more of the total food and alcohol receipts of the restaurant | 00010 | | | | | |
| 1 | Top Shelf without Assault or Battery coverage option | 01096 | | | | | |
| 1 | Assault or Battery | 01095 | | | | | |

#### MINIMUM PREMIUM FOR LIQUOR LIABILITY COVERAGE PART:

#### TOTAL PREMIUM FOR LIQUOR LIABILITY COVERAGE PART:
(This Premium may be subject to adjustment.)   **MP - minimum premium**

Coverage Form(s)/Part(s) and Endorsement(s) made a part of this policy at time of issue:
**See Form EOD (01/95)**

**THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.**

LQ 150 (02/09)

Includes copyrighted material of ISO Commercial Risk Services, Inc., with its permission.
Copyright, ISO Commercial Risk Services, Inc., 1983, 1984, 1988

**Page    1  Of  1**

**This page has been intentionally left blank.**

# UNITED STATES LIABILITY INSURANCE GROUP
# WAYNE, PENNSYLVANIA

This endorsement modifies insurance provided under the following:

## LIQUOR LIABILITY COVERAGE FORM

## WARRANTY ENDORSEMENT

**SECTION I - LIQUOR LIABILITY COVERAGE; 2. Exclusions** is amended to add the following:

Loss or expense, including but not limited to the cost of defense arising or resulting from a claim against any insured for "injury" based on the selling, serving or furnishing of any alcoholic beverage, if at any time, you have breached one or more of the warranties set forth in this Warranty Endorsement attached to and made a part of this policy.

| Location | Warranties |
|---|---|
| 1 | **The insured warrants as follows:** |

- The insured has no knowledge of more than 1 liquor liability and/or assault or battery claims or notification of potential liquor liability and/or assault or battery claims for this location arising out of occurrences within five years prior to the date the application is signed (excluding a liquor liability claim closed without payment because insured found not legally liable).

- The insured has no knowledge of more than three (3) citations, violations, charges or enforcement actions at this location within five (5) years of the date of the application. Of those three (3), no more than two (2) relate to the sale or service of alcohol or criminal activities.

**As a condition of coverage, the insured agrees to maintain the following warranties during the term of this policy and any renewals thereof:**

- Employees or other persons are not permitted to consume alcohol during their hours of employment or service.

- Only the insured and its authorized employees or members are permitted to serve alcohol. In the alternative, the insured warrants that persons serving alcohol who are not the insured's authorized employees or members are covered under a policy of liquor liability insurance with limits greater than or equal to the limits of this policy.

- The establishment closes by 2:30 AM daily.

- Alcohol sales cease by 2:00 AM.

- The insured does not offer beer for less than $1.00.

- The insured does not offer liquor or wine for less than $1.50.

| CL 2674896B | |
|---|---|
| Renewal of Number | |

**Home Office Copy**

**POLICY DECLARATIONS**

# Mount Vernon Fire Insurance Company
**1190 Devon Park Drive, Wayne, Pennsylvania 19087**
A Member Company of United States Liability Insurance Group

## No. CL 2674896C

NAMED INSURED AND ADDRESS:

**TC's Midtown Grill North, Inc.**
**DBA: TC's Midtown Grill**
**27 Hummingbird**
**Conway, AR 72032**

This contract is registered and delivered as a surplus line coverage under the Surplus Lines Insurance Law, and it may in some respects be different from contracts issued by insurers in the admitted markets, and, accordingly, it may, depending upon the circumstances, be more or less favorable to an insured than a contract from an admitted carrier might be. The protection of the Arkansas Property and Casualty Guaranty Act does not apply to this contract. A tax of four percent (4%) is required to be collected from the insured on all surplus lines premiums.

POLICY PERIOD: (MO. DAY YR.)  From:  03/11/2018  To:  03/11/2019

12:01 A.M. STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE

FORM OF BUSINESS:     Corporation

BUSINESS DESCRIPTION: Bar/Tavern

**IN RETURN FOR THE PAYMENT OF THE PREMIUM. AND SUBJECT TO ALL THE TERMS OF THIS POLICY. WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED.
THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.

PREMIUM

Liquor Liability Coverage Part

Surplus Lines Tax
**TOTAL:**

Coverage Form(s) and Endorsement(s) made a part of this policy at time of issue
**See Endorsement EOD (1/95)**

**EXHIBIT**

**7**

| Agent: | **M.J. KELLY CO. (AR) (1162)** | Issued:  **03/05/2018 12:33 PM** |
|---|---|---|
| | **P.O. Box 25540** | |
| | **Little Rock, AR  72221-5540** | |
| Broker: | | |

By: _Thomas P. Kearney_
Authorized Representative

**THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE PART DECLARATIONS, COVERAGE PART COVERAGE FORM(S) AND FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.**

UPD (08-07)

# EXTENSION OF DECLARATIONS

**Policy No. CL 2674896C**

Effective Date:   **03/11/2018**

12:01 AM STANDARD TIME

**FORMS AND ENDORSEMENTS**

**The following forms apply to the Liquor Liability coverage part**

| Endt# | Revised | Description of Endorsements |
|-------|---------|----------------------------|
| 2110 | 09/10 | Service Of Suit |
| CG0033 | 12/07 | Liquor Liability Coverage Form |
| IL0017 | 11/98 | Common Policy Conditions |
| IL0021 | 09/08 | Nuclear Energy Liability Exclusion Endorsement |
| IL0231 | 09/08 | Arkansas Changes - Cancellation And Nonrenewal |
| L 657AR | 11/10 | Absolute Pollution Exclusion - Liability |
| L-224AR | 10/10 | Punitive Or Exemplary Damages Exclusion |
| L-584C | 07/14 | Warranty Endorsement |
| L-590 | 01/04 | Exclusion - New Entities |
| L-610 | 11/04 | Expanded Definition Of Bodily Injury |
| L-618C | 09/09 | Amendment Of Premium Audit Conditions |
| LLQ100 | 07/06 | Amendatory Endorsement |
| LLQ367 | 12/06 | Minimum Earned Premium Endorsement |
| LLQ368 | 08/10 | Separation Of Insureds Clarification Endorsement |
| LQ-203 | 08/07 | Additional Insured - Liquor License Holder |
| LQ-346 | 09/06 | Definition of "Receipts" |
| LQ-354 | 10/09 | Limitation Of Coverage To Insured Premises |
| LQ-357 | 10/11 | Assault or battery sublimit (defense outside limits) |
| LQ-428 | 03/12 | Absolute Firearms Exclusion |
| NTP AR | 04/15 | Arkansas Notice To Policyholders |
| Jacket | 09/10 | Commercial Insurance Policy Jacket |

## LIQUOR LIABILITY COVERAGE PART DECLARATIONS

**Policy No.**   **CL 2674896C**

Effective Date:  03/11/2018
12:01 AM STANDARD TIME

### LIMITS OF INSURANCE

| | |
|---|---|
| Liquor Each Common Cause Limit | $1,000,000 |
| Liquor Aggregate Limit | $2,000,000 |
| Assault or Battery Each Common Cause Sublimit | $50,000 |
| Assault or Battery Aggregate Sublimit | $100,000 |

### LIABILITY DEDUCTIBLE — $0

### LOCATIONS OF ALL PREMISES YOU OWN, RENT OR OCCUPY

| Location | Address | Territory |
|---|---|---|
| 1 | 1611 East Oak Street, Suite 13-16, Conway, AR 72032 | 001 |

### PREMIUM COMPUTATION

| Loc | Classification | Code No. | Premium Basis | Rate Pr/Co | Rate All Other | Advance Premium Pr/Co | Advance Premium All Other |
|---|---|---|---|---|---|---|---|
| 1 | Restaurant - with sale of alcoholic beverages that are 50% or more of the total food and alcohol receipts of the restaurant | 00010 | 4 | | | | |
| 1 | Top Shelf without Assault or Battery coverage option | 01096 | | | | | |
| 1 | Assault or Battery | 01095 | | | | | |

#### MINIMUM PREMIUM FOR LIQUOR LIABILITY COVERAGE PART:

#### TOTAL PREMIUM FOR LIQUOR LIABILITY COVERAGE PART:

(This Premium may be subject to adjustment.)   **MP - minimum premium**

Coverage Form(s)/Part(s) and Endorsement(s) made a part of this policy at time of issue:

**See Form EOD (01/95)**

**THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.**

Includes copyrighted material of ISO Commercial Risk Services, Inc., with its permission.
Copyright, ISO Commercial Risk Services, Inc., 1983, 1984, 1988

**This page has been intentionally left blank.**

# UNITED STATES LIABILITY INSURANCE GROUP
# WAYNE, PENNSYLVANIA

This endorsement modifies insurance provided under the following:

## LIQUOR LIABILITY COVERAGE FORM

## WARRANTY ENDORSEMENT

**SECTION I - LIQUOR LIABILITY COVERAGE; 2. Exclusions** is amended to add the following:

Loss or expense, including but not limited to the cost of defense arising or resulting from a claim against any insured for "injury" based on the selling, serving or furnishing of any alcoholic beverage, if at any time, you have breached one or more of the warranties set forth in this Warranty Endorsement attached to and made a part of this policy.

| Location | Warranties |
|---|---|
| 1 | **The insured warrants as follows:** |

- The insured has no knowledge of more than 1 liquor liability and/or assault or battery claims or notification of potential liquor liability and/or assault or battery claims for this location arising out of occurrences within five years prior to the date the application is signed (excluding a liquor liability claim closed without payment because insured found not legally liable).

- The insured has no knowledge of more than three (3) citations, violations, charges or enforcement actions at this location within five (5) years of the date of the application.  Of those three (3), no more than two (2) relate to the sale or service of alcohol or criminal activities.

**As a condition of coverage, the insured agrees to maintain the following warranties during the term of this policy and any renewals thereof:**

- Employees or other persons are not permitted to consume alcohol during their hours of employment or service.

- Only the insured and its authorized employees or members are permitted to serve alcohol.  In the alternative, the insured warrants that persons serving alcohol who are not the insured's authorized employees or members are covered under a policy of liquor liability insurance with limits greater than or equal to the limits of this policy.

- The establishment closes by 2:30 AM daily.

- Alcohol sales cease by 2:00 AM.

- The insured does not offer beer for less than $1.00.

- The insured does not offer liquor or wine for less than $1.50.

**CL 2674896C**
_Renewal of Number_

**POLICY DECLARATIONS**

**No. CL 2674896D**

**Home Office Copy**

# Mount Vernon Fire Insurance Company
**1190 Devon Park Drive, Wayne, Pennsylvania 19087**
A Member Company of United States Liability Insurance Group

NAMED INSURED AND ADDRESS:
**TC'S MIDTOWN GRILL NORTH, INC.**
**DBA: TC'S MIDTOWN GRILL**
**27 HUMMINGBIRD**
**CONWAY, AR 72032**

This contract is registered and delivered as a surplus line coverage under the Surplus Lines Insurance Law, and it may in some respects be different from contracts issued by insurers in the admitted markets, and, accordingly, it may, depending upon the circumstances, be more or less favorable to an insured than a contract from an admitted carrier might be. The protection of the Arkansas Property and Casualty Guaranty Act does not apply to this contract. A tax of four percent (4%) is required to be collected from the insured on all surplus lines premiums.

POLICY PERIOD: (MO. DAY YR.)   From:  03/11/2019  To:  03/11/2020

12:01 A.M. STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE

FORM OF BUSINESS:       Corporation

BUSINESS DESCRIPTION: Bar/Tavern

IN RETURN FOR THE PAYMENT OF THE PREMIUM. AND SUBJECT TO ALL THE TERMS OF THIS POLICY. WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED.
THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.

|  | PREMIUM |
|---|---|
| Liquor Liability Coverage Part | |
| Surplus Lines Tax | |
| **TOTAL:** | |

**EXHIBIT**

**8**

Coverage Form(s) and Endorsement(s) made a part of this policy at time of issue
**See Endorsement EOD (1/95)**

Agent:   **M.J. KELLY CO. (AR) (1162)**
            **P.O. Box 25540**
            **Little Rock, AR  72221-5540**

Broker:

Issued:  **03/18/2019 9:36 AM**

By: _Thomas P. Kearney_
            Authorized Representative

THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE PART DECLARATIONS,
COVERAGE PART COVERAGE FORM(S) AND FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF,
COMPLETE THE ABOVE NUMBERED POLICY.

UPD (08-07)

# EXTENSION OF DECLARATIONS

**Policy No. CL 2674896D**

Effective Date:  **03/11/2019**

12:01 AM STANDARD TIME

**FORMS AND ENDORSEMENTS**

**The following forms apply to the Liquor Liability coverage part**

| Endt# | Revised | Description of Endorsements |
|---|---|---|
| 2110 | 04/15 | Service Of Suit |
| CG0033 | 12/07 | Liquor Liability Coverage Form |
| IL0017 | 11/98 | Common Policy Conditions |
| IL0021 | 09/08 | Nuclear Energy Liability Exclusion Endorsement |
| IL0231 | 09/08 | Arkansas Changes - Cancellation And Nonrenewal |
| L 657 | 10/16 | Absolute Pollution Exclusion - Liability |
| L-224AR | 10/10 | Punitive Or Exemplary Damages Exclusion |
| L-584C | 03/17 | Policy Conditions Endorsement |
| L-590 | 01/04 | Exclusion - New Entities |
| L-610 | 11/04 | Expanded Definition Of Bodily Injury |
| L-618C | 09/09 | Amendment Of Premium Audit Conditions |
| LLQ100 | 04/15 | Who Is An Insured Clarification Endorsement |
| LLQ367 | 12/06 | Minimum Earned Premium Endorsement |
| LLQ368 | 08/10 | Separation Of Insureds Clarification Endorsement |
| LQ-203 | 08/07 | Additional Insured - Liquor License Holder |
| LQ-346 | 09/06 | Definition of "Receipts" |
| LQ-354 | 10/09 | Limitation Of Coverage To Insured Premises |
| LQ-357 | 04/15 | "Assault" Or "Battery" Sublimit |
| LQ-428 | 10/16 | Absolute Firearms Exclusion |
| NTP AR | 04/15 | Arkansas Notice To Policyholders |
| Jacket | 09/10 | Commercial Insurance Policy Jacket |

## LIQUOR LIABILITY COVERAGE PART DECLARATIONS

**Policy No.  CL 2674896D**

Effective Date:  03/11/2019
12:01 AM STANDARD TIME

| LIMITS OF INSURANCE | |
|---|---:|
| Liquor Each Common Cause Limit | $1,000,000 |
| Liquor Aggregate Limit | $2,000,000 |
| Assault or Battery Each Common Cause Sublimit | $50,000 |
| Assault or Battery Aggregate Sublimit | $100,000 |

| LIABILITY DEDUCTIBLE | $0 |
|---|---:|

### LOCATIONS OF ALL PREMISES YOU OWN, RENT OR OCCUPY

| Location | Address | Territory |
|---|---|---|
| 1 | 1611 East Oak Street, Suite 13-16, Conway, AR 72032 | 001 |

### PREMIUM COMPUTATION •

| Loc | Classification | Code No. | Premium Basis | Rate Pr/Co | All Other | Advance Premium Pr/Co | All Other |
|---|---|---|---|---|---|---|---|
| 1 | Restaurant - with sale of alcoholic beverages that are 50% or more of the total food and alcohol receipts of the restaurant | 00010 | | | | | |
| 1 | Top Shelf without Assault or Battery coverage option | 01096 | | | | | |
| 1 | Assault or Battery | 01095 | | | | | |

### MINIMUM PREMIUM FOR LIQUOR LIABILITY COVERAGE PART:

### TOTAL PREMIUM FOR LIQUOR LIABILITY COVERAGE PART:
(This Premium may be subject to adjustment.)  **MP - minimum premium**

Coverage Form(s)/Part(s) and Endorsement(s) made a part of this policy at time of issue:
**See Form EOD (01/95)**

**THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.**

Includes copyrighted material of ISO Commercial Risk Services, Inc., with its permission.
Copyright, ISO Commercial Risk Services, Inc., 1983, 1984, 1988

LQ 150 (02/09)    **Page   1  Of  1**

**This page has been intentionally left blank.**

# UNITED STATES LIABILITY INSURANCE GROUP
# WAYNE, PENNSYLVANIA

This endorsement modifies insurance provided under the following:

## LIQUOR LIABILITY COVERAGE FORM

## POLICY CONDITIONS ENDORSEMENT

**SECTION I - LIQUOR LIABILITY COVERAGE; 2. Exclusions** is amended to add the following:

Loss or expense, including but not limited to the cost of defense arising or resulting from a claim against any insured for "injury" based on the selling, serving or furnishing of any alcoholic beverage, if at any time, you have breached one or more of the conditions set forth in this Endorsement attached to and made a part of this policy.

| Location | Policy Conditions |
|---|---|
| 1 | **The insured represents as follows:** |

- The insured has no knowledge of more than 1 liquor liability and/or assault or battery claims or notification of potential liquor liability and/or assault or battery claims for this location arising out of occurrences within five years prior to the date the application is signed (excluding a liquor liability claim closed without payment because insured found not legally liable).

- The insured has no knowledge of more than three (3) citations, violations, charges or enforcement actions at this location within five (5) years of the date of the application. Of those three (3), no more than two (2) relate to the sale or service of alcohol or criminal activities.

**As a condition of coverage, the insured agrees to maintain the following conditions during the term of this policy and any renewals thereof:**

- Employees or other persons are not permitted to consume alcohol during their hours of employment or service.

- Only the insured and its authorized employees or members are permitted to serve alcohol. In the alternative, the insured warrants that persons serving alcohol who are not the insured's authorized employees or members are covered under a policy of liquor liability insurance with limits greater than or equal to the limits of this policy.

- The establishment closes by 2:30 AM daily.

- Alcohol sales cease by 2:00 AM.

- The insured does not offer beer for less than $1.00.

- The insured does not offer liquor or wine for less than $1.50.

# ᴹⱼKELLY

M.J. KELLY CO.
P.O. Box 25540, Little Rock, AR 72221-5540
Phone: (501)945-3159

| Liquor Liability Warranty Application | MLQ015F3027 |
|---|---|

You or your agent provided the information used to complete the questions below. Please answer all remaining questions in the space provided. By signing this application you are warranting that all information on this application is true and correct.

### I.    General Information

Applicant's Name:  TC's Midtown Grill North, Inc
Form Of Business:  ☐ Individual   ☑ Corporation   ☐ Partnership   ☐ LLC   ☐ Other: _____
Mailing Address _____

| City: | | State: | Zip: |
|---|---|---|---|
| Phone Number: | | Fax Number: | |
| Web Address: | | E-mail Address | |

Inspection Contact _____

Coverage Desired:    ☐ Monoline Liability      ☐ Monoline Property      ☑ Monoline Liquor
Policy Term:    ☐ 3 Months      ☐ 6 Months      ☐ 9 Months      ☑ Annual

Has coverage been cancelled or non-renewed in the last 3 years (not applicable in the state of MO)?    ☐ Yes   ☐ No

    If Yes, provide complete details
What year did the business start?  2013 _____

Loss Information for the past 5 years:        ☑ None or provide details below

Violations in the past 5 years:        ☑ None or provide details below

Please advise all entities requesting to be added as Additional Insured on this policy:        ☑ Not Applicable

| Complete Name | Address | Interest |
|---|---|---|
| | | |
| | | |

Description of Operations:

<br><br><br>

| | No |
|---|---|
| Does the applicant ever sell or serve alcohol away from the premises? | |
| Does the applicant maintain General Liability insurance at limits equal to or greater than Liquor Liability limits?    ☑ Yes   ☐ No | |
| Has the applicant and all principals with a controlling interest in the applicant been financially solvent (i.e. no bankruptcy filings) for the last 12 months?    ☑ Yes   ☐ No | |
| Will the applicant maintain a valid liquor license, if required by ordinance or law, prior to the applicant selling, serving or distributing alcohol?    ☑ Yes   ☐ No | |

### II.    Locations of Coverage and Corresponding Classifications

Location #1

| Address | City | State | Zip |
|---|---|---|---|
| 1611 E. Oak Street, Suite 13-16 | Conway | AR | 72032 |

2/20/2015

**EXHIBIT**

**9**

Years At Current Location: _____

Liquor Underwriting Information for Location  1

| Classification | Liquor Class Code | Premium Basis | Liquor Receipts | Food Receipts |
|---|---|---|---|---|
| Restaurant - with sale of alcoholic beverages that are 50% or more of the total food and alcohol receipts of the restaurant | 00010 | Per 100 Gross Liquor Receipts | 25,000 | 75000 |

| | |
|---|---|
| Does the establishment cease the sale of alcohol daily? | Yes |
| What time does the sale of alcohol cease?  (enter format hh mm PM or hh mm AM) | 1 45 AM |
| Is the establishment open 24 hours? | No |
| What time does the establishment close?  (enter format hh mm PM or hh mm AM) | 2 00 AM |
| Does the establishment attract a predominantly youthful clientele ranging from 21-25 years of age? | No |
| Are all alcohol-serving employees certified in a formal alcohol training course not mandated by the state? | Yes |
| Does the establishment utilize an identification scanner on all patrons, regardless of age? | Yes |
| How many nights of major entertainment? (major entertainment is defined as - Bands with 3 or more members, excluding Jazz Bands, DJ with dancing, Dance Clubs, Dance Halls; or Adult or Exotic Dancing) | 2 |
| What is the entertainment frequency type? | Weekly |
| What is the lowest beer price offered, including happy hours or specials? | $1 50 |
| What is the lowest price offered for a glass of wine/liquor, including happy hours or specials? | $3 50 |
| Are bouncers, security or doorpersons ever employed? | No |
| Are facilities available for banquets, receptions or private affairs? | ☐ Yes    ☐ No |
| Are only the applicant and its authorized employees or members permitted to serve alcohol at all events where alcohol is present? | Yes |
| How often does entertainment for banquets or receptions occur at this location annually? | |
| Are same-day memberships available, or are members permitted to bring more than 3 guests per day (excluding banquet activities and immediate family members?) | No |
| Does or will applicant ever offer drink specials/happy hours? | No |

| | | |
|---|---|---|
| Are employees or other persons selling or serving alcohol permitted to consume alcohol during their hours of employment or service? | ☐ Yes | ☑ No |
| Within the past 5 years, has the applicant's Liquor Liability coverage been cancelled or non-renewed? | ☐ Yes | ☑ No |
| Is the applicant affiliated with a national franchise operation? | ☐ Yes | ☑ No |
| Does or will applicant ever offer drink specials/happy hours after 9 00 PM? | ☐ Yes | ☑ No |
| Does or will applicant ever offer more than 2 complimentary drinks per patron per day? | ☐ Yes | ☑ No |
| Does or will applicant ever offer "all you can drink" specials or other offers involving unlimited alcoholic beverages? | ☐ Yes | ☑ No |
| Are patrons under the legal drinking age permitted on the premises after 11 00 PM? | ☐ Yes | ☑ No |
| Does applicant offer bottle service or set ups? | ☐ Yes | ☑ No |
| Does applicant permit beer pong or other drinking games? | ☐ Yes | ☑ No |
| Does the establishment permit "BYOB" (bring your own bottle)? | ☐ Yes | ☑ No |

## III.    Limits of Insurance
LIQUOR LIABILITY

| | |
|---|---|
| Each Common Cause | $1,000,000 |
| Aggregate | $2,000,000 |

## IV    Additional Eligibility Information

Does the Applicant engage in any operations or have any classifications on their premise(s) other than those listed in Item II Locations of Coverage and Corresponding Classifications?    ☐ Yes    ☐ No

Fraud Statement. Any person who knowingly and with intent to defraud any insurance company or other person, files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime and may subject such person to criminal and/or civil penalties and other sanctions.

Applicant's Warranty Statement. I warrant that the information provided in this Application, and any amendments or modifications to this Application are true and correct. I acknowledge that the information provided in this Application is material to acceptance of the risk and the issuance of the requested policy by Company. I agree that any claim, incident, occurrence, event or material change in the Applicant's operation taking place between the date this application was signed and the effective date of the insurance policy applied for which would render inaccurate, untrue or incomplete, any information provided in this Application, will immediately be reported in writing to the Company and the Company may withdraw or modify any outstanding quotations and/or void any authorization or agreement to bind the insurance. Company may, but is not required, to make investigation of the information provided in this Application. A decision by the Company not to make or to limit such investigation does not constitute a waiver or estoppel of Company's rights.

I acknowledge that this Application is deemed incorporated by reference in any policy issued by Company in reliance thereon whether or not the Application is attached to the policy.

I acknowledge and agree that a breach of this WARRANTY STATEMENT is grounds for Company to declare void any policy or policies issued in reliance thereon and/or deny any claim(s) for coverage thereunder.

Applicants Signature: *Margarett Nelson*  Title *President*  Date 3/4/15
(Must be Owner, Officer or Partner)        (Required)              (Required)

Brokers Signature _____ Date _____

If your state requires that we have the name and address of your (insured's) authorized Agent or Broker

Name of Authorized Agent or Broker _____

Address _____

SUBMITTING THIS APPLICATION DOES NOT BIND THE APPLICANT TO PURCHASE INSURANCE.
ACCEPTANCE OF THIS APPLICATION DOES NOT BIND THE COMPANY TO ISSUE INSURANCE.

# USLI

1190 Devon Park Drive, PO Box 6700, Wayne, PA 19087
Phone (888) 523-5545   Fax (610) 688-4391

Policy #:    CL 2674896A    Insured:   TC's Midtown Grill North, Inc. DBA TC's Midtown Grill

Expiration:    03/11/2017    Location   1611 East Oak Street, Suite 13-16, Conway, AR 72032

## Liquor Liability
## Confirmation of Material Information Form
## for Renewal Policies Only

(To be completed, signed and dated by the Owner, Officer, Partner or Managing Member.)

If any of the following questions are answered 'YES', please submit complete details along with this application. The questions on the form apply to the Named Insured's operations as of the date indicated above and for the next 12 months.

|  |  | YES | NO |
|---|---|---|---|
| 1 | This account was underwritten last year based on annual food sales of $75,000 and alcohol sales of $350,000. Are sales expected to increase by more than 10% over the next 12 months? |  | ✓ |
|  | If yes, please specify expected sales of food $ _____ and alcohol $ _____ |  |  |
| 2 | a. Have there been any changes in the Named Insured's business or operations under the above policy in the past 12 months? |  | ✓ |
|  | b. Are any changes planned or anticipated in the next 12 months? |  | ✓ |
|  | If yes to (a) or (b), please describe changes: _____ |  |  |
| 3 | Does the Named Insured have a valid, active liquor license (if required by ordinance or law)? |  | ✓ |
| 4 | Minnesota only: Is Named Insured's liquor license a club license or similar license that limits sale of alcohol to club members and legitimate guests? |  | ✓ |
| 5 | Is alcohol sold, served or furnished only by authorized employees or members of the Named Insured? | ✓ |  |
|  | If "no", are persons selling, serving or furnishing alcohol required to be covered under a policy of liquor liability insurance with limits equal to or greater than the limits of the above policy? |  |  |
| 6 | For Non-Profit Private, Fraternal or Social Clubs:   N/A |  |  |
|  | a. Are same day memberships available? |  |  |
|  | b. Are members permitted to bring more than 3 guests per day (excluding banquet activities and immediate family members)? |  |  |
|  | c. Is self service of alcohol permitted by members? |  |  |
|  | d. If BYOB (bring your own bottle) is permitted, is it limited to banquet operations only? |  |  |
| 7 | Do alcohol sales continue past 1:45 AM or does establishment close after 2:00 AM? |  | ✓ |
| 8 | Does Named Insured feature any major entertainment(e.g. bands with 3 or more members [excluding jazz bands], dance clubs or dance halls, DJ with dancing)? | ✓ |  |
|  | If yes, specify number of times per week: _2_ or times per year: 52 |  |  |
| 9 | If facilities are available for banquets, receptions or private affairs, is entertainment provided by the Named Insured or Leasee? |  | ✓ |
|  | If yes, specify number of times per week: _____ or times per year: _____ |  |  |
| 10 | Does the Named Insured offer any drinks specials or happy hours after 9:00 PM? (Not applicable in Massachusetts, North Carolina or Vermont) |  | ✓ |
| 11 | Does the Named Insured offer more than two complimentary drinks per patron per day, beer pong or other drinking games or "all you can drink" specials, bottle service or setups (Including New Year's Eve or other Special Events)? |  | ✓ |
| 12 | Does the Named Insured sell beer for less than $1.00 or wine/liquor for less than $1.50? |  | ✓ |
| 13 | Is BYOB (bring your own bottle) permitted? |  | ✓ |
| 14 | Are employees or other persons selling or serving alcohol permitted to consume alcohol during their hours of employment or service for the Named Insured? |  | ✓ |

LQ-MIF-CAT I/CD(03/15)    Page 1  of 2

EXHIBIT

**10**

15  Does the Named Insured maintain General Liability Insurance at limits equal to or greater than the limits of this liquor liability insurance?

16  Does the Named Insured use bouncers, security or doorpersons in its operations?

17  Has the Named Insured received any fines or citations for violations of law or ordinance related to illegal activities or the sale of alcohol occuring at this location within the past five years?
    If yes, Please answer the following:
    a.  Provide date(s) and detailed description(s) of each violation.

    b.  Describe any measures and/or procedures that have been put in place to prevent future violations.    N/A

18  Has the Named Insured received notice of any liquor liability and/or assault or battery claims or potential liquor liability and/or assault or battery claims occuring at this location within the past five years?

    a.  If yes, and the claim was not reported to this Company, please provide up to date information on reserves, payments made, and status of claim.

19  a.  Are patrons under the legal drinking age permitted on the Named Insured's premises?

    b.  Are patrons under the legal drinking age permitted on the Named Insured's premises after 11:00 PM?

20  Does the Named Insured's establishment cater to predominantly youthful clientele ranging from 21 to 25 years of age?
    If yes, are all alcohol-servers certified through a formal alcohol training course not mandated by the state?

21  Has your mailing or location address changed during the last year? If so, please provide your current address.    Thomas Colclasure
    Mailing:  27 Hummingbird, Conway, AR  72032
    Location: _____
22  Insured Email Address:  TCSMIDTOWN@CONWAYCORP.NET

WARRANTIES:  I/we warrant that the information contained herein is true and that it shall be the basis of the policy of insurance and deemed incorporated therein, should the Company evidence its acceptance of this application by issuance of a policy. I/we agree that such policy shall be null and void if such information is false or misleading in any way, as this would materially affect acceptance of a risk by the Company. I/we hereby authorize release of claim information from any insurers or their general agent. I/we warrant that premises liability coverage will be maintained at limits at least equal to the liquor liability limits during the entire term of the liquor policy. I/we agree to submit records for audit by the Company upon termination or expiration of this policy for the determination of actual gross receipts during the period of coverage, if requested.

I certify the above is true and representative to the best of my knowledge.

_____        Pres.        3/1/17
Signature of Owner, Officer, Partner or Managing        Title        Date
Member*

*Signing this application does not require the insurer to issue a policy of insurance or require the applicant to accept the insurance offered.

# USLI

1190 Devon Park Drive. PO Box 6700. Wayne. PA 19087
Phone (888) 523-5545   Fax (610) 688-4391

Policy #:  CL 2674896B   Insured:  TC's Midtown Grill North, Inc. DBA TC's Midtown Grill

Expiration:  03/11/2018   Location  1611 East Oak Street, Suite 13-16. Conway, AR 72032

## Liquor Liability
## Confirmation of Material Information Form
## for Renewal Policies Only
(To be completed. signed and dated by the Owner. Officer. Partner or Managing Member.)

If any of the following questions are answered 'YES', please submit complete details along with this application. The questions on the form apply to the Named Insured's operations as of the date indicated above and for the next 12 months.

|  |  | YES | NO |
|---|---|---|---|
| 1 | This account was underwritten last year based on annual food sales of $75,000 and alcohol sales of $456,830. Are sales expected to increase by more than 10% over the next 12 months? |  | ✓ |
|  | If yes, please specify expected sales of food $ _____ and alcohol $ _____ |  |  |
| 2 | a. Have there been any changes in the Named Insured's business or operations under the above policy in the past 12 months? |  | ✓ |
|  | b. Are any changes planned or anticipated in the next 12 months? |  | ✓ |
|  | If yes to (a) or (b). please describe changes: _____ |  |  |
| 3 | Does the Named Insured have a valid. active liquor license (if required by ordinance or law)? | ✓ |  |
| 4 | Minnesota only: Is Named Insured's liquor license a club license or similar license that limits sale of alcohol to club members and legitimate guests? |  |  |
| 5 | Is alcohol sold, served or furnished only by authorized employees or members of the Named Insured? | ✓ |  |
|  | If "no", are persons selling, serving or furnishing alcohol required to be covered under a policy of liquor liability insurance with limits equal to or greater than the limits of the above policy?  **N/A** |  |  |
| 6 | For Non-Profit Private, Fraternal or Social Clubs:  **N/A** |  |  |
|  | a. Are same day memberships available? |  |  |
|  | b. Are members permitted to bring more than 3 guests per day (excluding banquet activities and immediate family members)? |  |  |
|  | c. Is self service of alcohol permitted by members? |  |  |
|  | d. If BYOB (bring your own bottle) is permitted. is it limited to banquet operations only? |  |  |
| 7 | Do alcohol sales continue past 1:45 AM or does establishment close after 2:00 AM? |  | ✓ |
| 8 | Does Named Insured feature any major entertainment(e.g. bands with 3 or more members [excluding jazz bands]. dance clubs or dance halls. DJ with dancing)? | ✓ |  |
|  | If yes, specify number of times per week: **2** or times per year: **52** |  |  |
| 9 | If facilities are available for banquets. receptions or private affairs. is entertainment provided by the Named Insured or Leasee? |  | ✓ |
|  | If yes, specify number of times per week:_____or times per year:_____ |  |  |
| 10 | Does the Named Insured offer any drinks specials or happy hours after 9:00 PM? (Not applicable in Massachusetts. North Carolina or Vermont) |  | ✓ |
| 11 | Does the Named Insured offer more than two complimentary drinks per patron per day, beer pong or other drinking games or "all you can drink" specials. bottle service or setups (Including New Year's Eve or other Special Events)? |  | ✓ |
| 12 | Does the Named Insured sell beer for less than $1.00 or wine/liquor for less than $1.50? |  | ✓ |
| 13 | Is BYOB (bring your own bottle) permitted? |  | ✓ |
| 14 | Are employees or other persons selling or serving alcohol permitted to consume alcohol during their hours of employment or service for the Named insured? |  | ✓ |

LQ-MIF-CAT I/CD(03/15)

EXHIBIT
**11**

15  Does the Named Insured maintain General Liability Insurance at limits equal to or greater than the limits of this liquor liability insurance?

16  Does the Named Insured use bouncers, security or doorpersons in its operations?

17  Has the Named Insured received any fines or citations for violations of law or ordinance related to illegal activities or the sale of alcohol occuring at this location within the past five years?
    If yes, Please answer the following:
    a.  Provide date(s) and detailed description(s) of each violation.

                                                                N/A

    b.  Describe any measures and/or procedures that have been put in place to prevent future violations.

18  Has the Named Insured received notice of any liquor liability and/or assault or battery claims or potential liquor liability and/or assault or battery claims occuring at this location within the past five years?

    a.  If yes, and the claim was not reported to this Company, please provide up to date information on reserves, payments made, and status of claim.

19  a.  Are patrons under the legal drinking age permitted on the Named Insured's premises?

    b.  Are patrons under the legal drinking age permitted on the Named Insured's premises after 11:00 PM?

20  Does the Named Insured's establishment cater to predominantly youthful clientele ranging from 21 to 25 years of age?
    If yes, are all alcohol-servers certified through a formal alcohol training course not mandated by the state?

21  Has your mailing or location address changed during the last year? If so, please provide your current address.
    Mailing: _____
    Location: _____

22  Insured Email Address:

WARRANTIES: I/we warrant that the information contained herein is true and that it shall be the basis of the policy of insurance and deemed incorporated therein, should the Company evidence its acceptance of this application by issuance of a policy. I/we agree that such policy shall be null and void if such information is false or misleading in any way, as this would materially affect acceptance of a risk by the Company. I/we hereby authorize release of claim information from any insurers or their general agent. I/we warrant that premises liability coverage will be maintained at limits at least equal to the liquor liability limits during the entire term of the liquor policy. I/we agree to submit records for audit by the Company upon termination or expiration of this policy for the determination of actual gross receipts during the period of coverage, if requested.

I certify the above is true and representative to the best of my knowledge.

_____        President        2/23/18

Signature of Owner, Officer, Partner or Managing        Title        Date
Member*

*Signing this application does not require the insurer to issue a policy of insurance or require the applicant to accept the insurance offered.

LQ-MIF-CAT I/CD(03/15)                                    Page 2  of 2

# USLI

1190 Devon Park Drive, PO Box 6700, Wayne, PA 19087

Policy #:    **CL 2674896C**    Insured:    **TC's Midtown Grill North, Inc. DBA TC's Midtown Grill**

Expiration:    **03/11/2019**    Location    **1611 East Oak Street, Suite 13-16, Conway, AR 72032**

## Liquor Liability
## Confirmation of Material Information Form
## for Renewal Policies Only
(To be completed, signed and dated by the Owner, Officer, Partner or Managing Member.)

If any of the following questions are answered 'YES', please submit complete details along with this application. The questions on the form apply to the Named Insured's operations as of the date indicated above and for the next 12 months.

|  |  | YES | NO |
|---|---|---|---|
| 1 | This account was underwritten last year based on annual food sales of $75,000 and alcohol sales of $567,871. Are sales expected to increase by more than 10% over the next 12 months? |  | ✓ |
|  | If yes, please specify expected sales of food $ _____ and alcohol $ _____ |  |  |
| 2 | a. Have there been any changes in the Named Insured's business or operations under the above policy in the past 12 months? |  | ✓ |
|  | b. Are any changes planned or anticipated in the next 12 months? |  | ✓ |
|  | If yes to (a) or (b), please describe changes: _____ |  |  |
| 3 | Does the Named Insured have a valid, active liquor license (if required by ordinance or law)? | ✓ |  |
| 4 | Minnesota only: Is Named Insured's liquor license a club license or similar license that limits sale of alcohol to club members and legitimate guests? | N/A |  |
| 5 | Is alcohol sold, served or furnished only by authorized employees or members of the Named Insured? | ✓ |  |
|  | If "no", are persons selling, serving or furnishing alcohol required to be covered under a policy of liquor liability insurance with limits equal to or greater than the limits of the above policy? | N/A |  |
| 6 | For Non-Profit Private, Fraternal or Social Clubs: |  |  |
|  | a. Are same day memberships available? |  | ✓ |
|  | b. Are members permitted to bring more than 3 guests per day (excluding banquet activities and immediate family members)? |  | ✓ |
|  | c. Is self service of alcohol permitted by members? |  | ✓ |
|  | d. If BYOB (bring your own bottle) is permitted, is it limited to banquet operations only? |  | ✓ |
| 7 | Do alcohol sales continue past 12:00 AM or does establishment close after 12:00 AM? |  | ✓ |
| 8 | Does Named Insured feature any major entertainment(e.g. bands with 3 or more members [excluding jazz bands], dance clubs or dance halls, DJ with dancing)? | ✓ |  |
|  | If yes, specify number of times per week: _2_ or times per year:_____ |  |  |
| 9 | If facilities are available for banquets, receptions or private affairs, is entertainment provided by the Named Insured or Leasee? |  | ✓ |
|  | If yes, specify number of times per week:_____or times per year:_____ |  |  |
| 10 | Does the Named Insured offer any drinks specials or happy hours after 9:00 PM? (Not applicable in Massachusetts, North Carolina or Vermont) |  | ✓ |
| 11 | Does the Named Insured offer more than two complimentary drinks per patron per day, beer pong or other drinking games or "all you can drink" specials, bottle service or setups (Including New Year's Eve or other Special Events)? |  | ✓ |
| 12 | Does the Named Insured sell beer for less than $1.00 or wine/liquor for less than $1.50? |  | ✓ |
| 13 | Is BYOB (bring your own bottle) permitted? |  | ✓ |
| 14 | Are employees or other persons selling or serving alcohol permitted to consume alcohol during their hours of employment or service for the Named insured? |  | ✓ |

LQ-MIF-CAT I/CD(03/15)    Page 1  of  2

**EXHIBIT**
**12**

15  Does the Named Insured maintain General Liability Insurance at limits equal to or greater than the limits of this liquor liability insurance?

16  Does the Named Insured use bouncers, security or doorpersons in its operations?

17  Has the Named Insured received any fines or citations for violations of law or ordinance related to illegal activities or the sale of alcohol occuring at this location within the past five years?
   If yes, Please answer the following:
   a.  Provide date(s) and detailed description(s) of each violation.

   b.  Describe any measures and/or procedures that have been put in place to prevent future violations.

18  Has the Named Insured received notice of any liquor liability and/or assault or battery claims or potential liquor liability and/or assault or battery claims occuring at this location within the past five years?

   a.  If yes, and the claim was not reported to this Company, please provide up to date information on reserves, payments made, and status of claim.

19 a.  Are patrons under the legal drinking age permitted on the Named Insured's premises?

   b.  Are patrons under the legal drinking age permitted on the Named Insured's premises after 11:00 PM?

20  Does the Named Insured's establishement cater to predominantly youthful clientele ranging from 21 to 25 years of age?
   If yes, are all alcohol-servers certified through a formal alcohol training course not mandated by the state?

21  Has your mailing or location address changed during the last year?  If so, please provide your current address.
   Mailing: _____
   Location: _____

22  Insured Email Address:

WARRANTIES:  I/we warrant that the information contained herein is true and that it shall be the basis of the policy of insurance and deemed incorporated therein, should the Company evidence its acceptance of this application by issuance of a policy.  I/we agree that such policy shall be null and void if such information is false or misleading in any way, as this would materially affect acceptance of a risk by the Company.  I/we hereby authorize release of claim information from any insurers or their general agent.  I/we warrant that premises liability coverage will be maintained at limits at least equal to the liquor liability limits during the entire term of the liquor policy.  I/we agree to submit records for audit by the Company upon termination or expiration of this policy for the determination of actual gross receipts during the period of coverage, if requested.

I certify the above is true and representative to the best of my knowledge.

_____          _____          _____
Signature of Owner, Officer, Partner or Managing          Title          Date
Member*

*Signing this application does not require the insurer to issue a policy of insurance or require the applicant to accept the insurance offered.

# USLI

1190 Devon Park Drive, PO Box 6700, Wayne, PA 19087
Phone (888) 523-5545   Fax (610) 688-4391

| Policy #: | **CL 2674896D** | Insured: | **TC's Midtown Grill North, Inc. DBA TC's Midtown Grill** |
|---|---|---|---|
| Expiration: | **03/11/2020** | Location | **1611 East Oak Street, Suite 13-16, Conway, AR 72032** |

## Liquor Liability
## Confirmation of Material Information Form
## for Renewal Policies Only

(To be completed, signed and dated by the Owner, Officer, Partner or Managing Member.)

If any of the following questions are answered 'YES', please submit complete details along with this application. The questions on the form apply to the Named Insured's operations as of the date indicated above and for the next 12 months.

|  |  | YES | NO |
|---|---|---|---|
| 1 | This account was underwritten last year based on annual food sales of $75,000 and alcohol sales of $646,431. Are sales expected to increase by more than 10% over the next 12 months? | | ✓ |
| | If yes, please specify expected sales of food $ _____ and alcohol $ _____ | | |
| 2 | a. Have there been any changes in the Named Insured's business or operations under the above policy in the past 12 months? | | ✓ |
| | b. Are any changes planned or anticipated in the next 12 months? | | ✓ |
| | If yes to (a) or (b), please describe changes: _____ | | |
| 3 | Does the Named Insured have a valid, active liquor license (if required by ordinance or law)? | ✓ | |
| 4 | Minnesota only: Is Named Insured's liquor license a club license or similar license that limits sale of alcohol to club members and legitimate guests? | N/A | |
| 5 | Is alcohol sold, served or furnished only by authorized employees or members of the Named Insured? | ✓ | |
| | If "no", are persons selling, serving or furnishing alcohol required to be covered under a policy of liquor liability insurance with limits equal to or greater than the limits of the above policy? | | |
| 6 | For Non-Profit Private, Fraternal or Social Clubs: | | |
| | a. Are same day memberships available? | | ✓ |
| | b. Are members permitted to bring more than 3 guests per day (excluding banquet activities and immediate family members)? | | ✓ |
| | c. Is self service of alcohol permitted by members? | | ✓ |
| | d. If BYOB (bring your own bottle) is permitted, is it limited to banquet operations only? | N/A | |
| 7 | Do alcohol sales continue past 1:45 AM or does establishment close after 2:00 AM? | ✓ | |
| 8 | Does Named Insured feature any major entertainment(e.g. bands with 3 or more members [excluding jazz bands], dance clubs or dance halls, DJ with dancing)? | | ✓ |
| | If yes, specify number of times per week:_____ or times per year:_____ | | |
| 9 | If facilities are available for banquets, receptions or private affairs, is entertainment provided by the Named Insured or Leasee? | N/A | |
| | If yes, specify number of times per week:_____or times per year:_____ | | |
| 10 | Does the Named Insured offer any drinks specials or happy hours after 9:00 PM? (Not applicable in Massachusetts, North Carolina or Vermont) | | ✓ |
| 11 | Does the Named Insured offer more than two complimentary drinks per patron per day, beer pong or other drinking games or "all you can drink" specials, bottle service or setups (Including New Year's Eve or other Special Events)? | | ✓ |
| 12 | Does the Named Insured sell beer for less than $1.00 or wine/liquor for less than $1.50? | | ✓ |
| 13 | Is BYOB (bring your own bottle) permitted? | | ✓ |
| 14 | Are employees or other persons selling or serving alcohol permitted to consume alcohol during their hours of employment or service for the Named Insured? | | ✓ |

LQ-MIF-CAT I/CTX(03/15)

**EXHIBIT**

**13**

15  Does the Named Insured maintain General Liability Insurance at limits equal to or greater than the limits of this liquor liability insurance? ✓ ___

16  Does the Named Insured use bouncers, security or doorpersons in its operations? ✓ ___

17  Has the Named Insured received any fines or citations for violations of law or ordinance related to illegal activities or the sale of alcohol occuring at this location within the past five years? ___ ✓
    If yes, Please answer the following:
    a.  Provide date(s) and detailed description(s) of each violation.

    b.  Describe any measures and/or procedures that have been put in place to prevent future violations.

18  Has the Named Insured received notice of any liquor liability and/or assault or battery claims or potential liquor liability and/or assault or battery claims occuring at this location within the past five years? ___ ✓

    a.  If yes, and the claim was not reported to this Company, please provide up to date information on reserves, payments made, and status of claim.

19  a.  Are patrons under the legal drinking age permitted on the Named Insured's premises? ___ ✓
    b.  Are patrons under the legal drinking age permitted on the Named Insured's premises after 11:00 PM? ___ ✓

20  Does the Named Insured s establishement cater to predominantly youthful clientele ranging from 21 to 25 years of age? ___ ✓
    If yes, are all alcohol-servers certified through a formal alcohol training course not mandated by the state? ___ ___

21  Has your mailing or location address changed during the last year? If so, please provide your current address ✓ ___
    Mailing:  _5813 Fairview Ave, North Little Rock, AR 72116_
    Location: _____

22  Insured Email Address:

WARRANTIES: I/we warrant that the information contained herein is true and that it shall be the basis of the policy of insurance and deemed incorporated therein, should the Company evidence its acceptance of this application by issuance of a policy  I/we agree that such policy shall be null and void if such information is false or misleading in any way, as this would materially affect acceptance of a risk by the Company.  I/we hereby authorize release of claim information from any insurers or their general agent. I we warrant that premises liability coverage will be maintained at limits at least equal to the liquor liability limits during the entire term of the liquor policy. I/we agree to submit records for audit by the Company upon termination or expiration of this policy for the determination of actual gross receipts during the period of coverage, if requested.

I certify the above is true and representative to the best of my knowledge.

_Signature_          Owner                    3/5/2020
Signature of Owner, Officer, Partner or Managing        Title                    Date
Member*

*Signing this application does not require the insurer to issue a policy of insurance or require the applicant to accept the insurance offered.